**Electronically Filed
Supreme Court
SCAP-14-0001363
07-JUN-2017
08:53 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

MICHAEL PATRICK O'GRADY, individually; and
LEILONI O'GRADY, individually,
Plaintiffs-Appellants,

vs.

STATE OF HAWAIʻI and
STATE OF HAWAIʻI DEPARTMENT OF TRANSPORTATION,
Defendants-Appellees,

and

THE COUNTY OF HAWAIʻI; HAWAIIAN ELECTRIC COMPANY;
HAWAIIAN ELECTRIC LIGHT COMPANY; HAWAIIAN ELECTRIC
INDUSTRIES, INC.; HULU LOLO, INC.;
and DOES 1—100, inclusive,

Defendants.

SCAP-14-0001363

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CAAP-14-0001363; CIV. NO. 07-01-0372)

JUNE 7, 2017

RECKTENWALD, C.J., McKENNA, POLLACK, AND WILSON, JJ., AND
CIRCUIT COURT JUDGE CRABTREE, IN PLACE OF NAKAYAMA, J., RECUSED

OPINION OF THE COURT BY POLLACK, J.

This case concerns a negligence action against the State of Hawai'i and the State of Hawai'i Department of Transportation (collectively, the "State") involving a rockfall and related car accident on a state highway. The Circuit Court of the Third Circuit (the "circuit court") determined that, although the State breached a duty of care owed to the plaintiffs, the State was not liable because the plaintiffs failed to prove legal causation. The issues presented on appeal are whether the circuit court erred in holding that the State's breach of its duty of care was not a legal cause of the plaintiffs' injuries and whether the discretionary function exception applies in this case. We conclude that the circuit court misapprehended the relevant standard for evaluating legal causation; accordingly, we remand the case to the circuit court for application of the correct standard. We also address the applicability of the discretionary function exception.

## I. BACKGROUND

Michael and Leiloni O'Grady were driving on Route 11 in the County of Hawai'i on March 8, 2007, when a rockfall occurred. A boulder and other material fell onto the highway, and a portion of the rockfall struck the O'Gradys' vehicle, resulting in their injuries.

At the time of the accident, Route 11 was a public highway that the State was responsible for maintaining. Because of Route 11's location, it fell within the responsibility of the State's Hawai'i District (the "Hawai'i District").

The State's Rockfall Hazard Rating System project ("Rockfall Hazard Project" or "RHRS project") has included the Hawai'i District since the project's expansion in 2004. The project rates rockfall hazards for danger: Class A sites were determined to be the most dangerous with high potential for rockfalls, Class B sites were less dangerous, and Class C sites raised virtually no concerns. The location of the rockfall in this case (the "accident site") was rated as a Class A site on December 22, 2004, and it remained a Class A site at the time of the March 8, 2007 accident.

Rockfall hazards that were classified as Class A sites were also assessed using a more detailed rating system. Under this rating system, the accident site in this case received the highest possible score for the differential erosion feature and the differential erosion rates, which concern the geological character of the slope where the slope consists of two different materials resulting in differential erosion. The accident site also received the highest possible score for the block size volume, which concerns the potential mass of the material that was anticipated to fall in the event of a rockfall.

Prior to March 8, 2007, the State did not have a routine ongoing coordinated system in place to protect against rockfall hazards adjacent to state highways at the time of the accident. Hawai'i District maintenance employees were not trained to identify areas with significant rockfall hazards, and there was minimal integration between the Hawai'i Distict engineer and the State's Rockfall Hazard Project results. From time to time, information from the State's Rockfall Hazard Project may have been shared with the Hawai'i District; however, the Hawai'i District engineer was not aware of the State's Rockfall Hazard Project.

On December 27, 2007, the O'Gradys filed their first amended complaint for damages in the circuit court. The O'Gradys sought general, special, and exemplary damages against the State under four theories of liability: negligence, dangerous condition of public property, vicarious liability, and loss of consortium.

A non-jury, bifurcated trial on liability was held by the circuit court in November and December of 2011. After finding that the State owed a duty of care to the O'Gradys and that it had breached this duty, the circuit court determined that the State was not liable to the O'Gradys based on its conclusion that the O'Gradys failed to prove legal causation. The court later issued "Amended Findings of Fact and Conclusions

4

of Law" on May 17, 2012. The circuit court's findings of fact and conclusions of law found that the O'Gradys were injured as a result of the rockfall and that the State was responsible for the maintenance of the road where the accident occurred. The circuit court found that the accident site was initially rated as a Class A site on December 22, 2004, and that a Class A site is one that is determined to be the most dangerous with a high potential for rockfalls. The circuit court also found as follows:

> On occasion, the following might have occurred: (a) the State employees may have noticed an area which experienced frequent rockfalls on the roadway or the shoulder, (b) the State employees may have informed the supervisor, (c) the supervisor may have informed the District Engineer, (d) the District Engineer may have asked that a geotechnical engineer come from Honolulu, (e) the geotechnical engineer may have come from Honolulu and undertaken a study, and (f) based upon the study, the State may have obtained the funding to address the rockfall hazard.

The circuit court determined that in order to reasonably address the danger of rockfalls adjacent to State highways, the Hawai'i District should have

> (a) had a system of routine, ongoing maintenance, (b) trained its maintenance personnel to recognize potential rockfall hazards, (c) had the ability to undertake rockfall prevention projects which reasonably fell within a roadway maintenance budget, and (d) consulted regularly with a geotechnical engineer who had information regarding the findings of the RHRS project in order to integrate information held between them.

The court found that the Hawai'i District did not fulfill the above-listed responsibilities.

The circuit court made the following additional findings of fact, which are challenged on appeal by the O'Gradys:

> 6. The purpose of the RHRS was to identify the rockfall hazards adjacent to State highways in order to implement remedial work. The intent was to use the information garnered from the RHRS project to choose large-scale projects which would be funded by the Legislature of the State of Hawai'i (the "Legislature") and with Federal funding.
>
> . . . .
>
> 14. However, Plaintiffs have failed to prove that from December 22, 2004 until March 8, 2007, it was reasonably foreseeable that a rockfall at the Accident Site was so imminent that it was necessary for the State to immediately address the rockfall potential.
>
> 15. Plaintiffs failed to present evidence from which it could be reasonably determined what the cost would have been for the work required to eliminate the rockfall hazard at the Accident Site prior to March 8, 2007.
>
> 16. According to Plaintiffs' expert, Dr. John Lockwood, the scale of the rockfall at the Accident Site on March 8, 2007, was approximately 70 cubic yards of material weighing between 150 to 175 tons. Although the size of the rockfall itself does not necessarily correlate to the scale of work which would have been required to eliminate the rockfall hazard at the Accident Site prior to March 8, 2007, a fair inference is that it would have been a large-scale project.
>
> 17. The cost of the work performed by Janod, Inc. in advising State personnel on how to bring down the rock at the Accident Site after the March 8, 2007 accident, $1,453.22, is not an accurate measure of the cost of the work which would have been required to eliminate the rockfall hazard at the Accident Site prior to March 8, 2007. The March 8, 2007 rockfall had significantly altered the Accident Site prior to the remedial work performed after the rockfall.
>
> 18. Plaintiffs failed to prove that from December 22, 2004 to March 8, 2007, the Hawai'i District had employees and equipment to eliminate the rockfall hazard at the Accident Site.
>
> 19. Plaintiffs failed to prove that from December 22, 2004 to March 8, 2007, the Hawai'i District had the funds available to engage a private entity to eliminate the rockfall hazard at the Accident Site.

20. Plaintiffs failed to prove that if the Hawai'i District performed the actions suggested under Paragraph 13 above, this would have probably resulted in the Hawai'i District taking action to eliminate the rockfall hazard at the Accident Site between December 22, 2004 to March 8, 2007.

21. Plaintiffs have failed to prove that wrongful conduct on the part of the State, if any, was a substantial factor in causing the March 8, 2007 accident and their consequent injuries.

The circuit court concluded that the State owed "a duty of care to travelers on a state highway to maintain the highway so it is reasonably safe for travel," which includes "the duty to exercise ordinary care to maintain the areas adjacent to the highway so that the highway is reasonably safe from rockfalls." The court further concluded that the State "breached this duty of care by not having a routine, coordinated system of rockfall mitigation at the operational level in the Hawai'i District from December 22, 2004 to March 8, 2007." Nonetheless, the circuit court determined in conclusion of law ("COL") 4 that the State was not liable to the O'Gradys, based on its conclusion in COL 3 that the O'Gradys "failed to prove by a preponderance of the evidence that this breach of the duty of care was a proximate cause of the March 8, 2007 accident and their consequent injuries."

The circuit court also concluded the following with regard to the discretionary function exception:

5. Under HRS § 662-15(1), the State is not liable for its acts of its employees in the performance of a "discretionary function". In determining whether the discretionary function exception to liability applies, the

7

issue is whether broad policy considerations are involved rather than operational decisions regarding routine everyday matters. If the former, then the discretionary function exception applies and the State is not liable for the conduct which falls within the exception.

6. Ordinary, everyday maintenance of areas adjacent to a State highway in order to prevent or mitigate rockfalls onto the highway is an operational level activity. The decision to undertake a large-scale rockfall prevention or mitigation project which requires a specific appropriation from the Legislature or Federal funding may fall within the discretionary function exception. However, the State should not escape liability under the discretionary function exception merely by choosing to address rockfalls onto a State highway only with large-scale projects and declining to use routine, everyday maintenance to address the risk.

The circuit court entered final judgment on December 11, 2014, and the O'Gradys timely appealed. We granted the O'Gradys' request to transfer the appeal to this court.

## II. STANDARDS OF REVIEW

The circuit court's findings of fact are reviewed under the clearly erroneous standard:

A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed. A finding of fact is also clearly erroneous when the record lacks substantial evidence to support the finding. We have defined 'substantial evidence' as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

In re Grievance Arbitration Between State of Haw. Org. of Police Officers, 135 Hawai'i 456, 461–62, 353 P.3d 998, 1003–04 (2015) (quoting Daiichi Haw. Real Estate Corp. v. Lichter, 103 Hawai'i 325, 337, 82 P.3d 411, 423 (2003)).

Conclusions of law are ordinarily reviewed under the right/wrong standard. Estate of Klink ex rel. Klink v. State, 113 Hawai'i 332, 351, 152 P.3d 504, 523 (2007). Thus, a conclusion of law that is supported by the trial court's findings of fact and reflects an application of the correct rule of law will not be overturned. Id. However, when a conclusion of law presents mixed questions of fact and law, we review it under the clearly erroneous standard because the court's conclusions are dependent on the facts and circumstances of each individual case. Id.

## III. DISCUSSION

The O'Gradys raise two points of error on appeal. First, the O'Gradys assert that the circuit court erred in holding that the State's breach of its duty of care was not a legal cause of the O'Gradys' injuries.[1] Second, the O'Gradys assert that the circuit court erred in relying on the discretionary function exception to support its decision.[2]

In order to establish a defendant's liability for negligence, a plaintiff must prove (1) a duty recognized by the

_____

[1] The O'Gradys assert that this error is reflected in the circuit court's findings and conclusions, in particular, FOFs 6, 14, 15, 16, 17, 18, 19, 20, 21, and COLs 3-4.

[2] The O'Gradys assert that this error is reflected in the circuit court's findings and conclusions, in particular, COLs 5 and 6, and also in all other findings and conclusions the circuit court relied on in determining liability, including FOFs 6, 14, 15, 16, 17, 18, 19, 20, 21, and COLs 3-4.

law that the defendant owed to the plaintiff; (2) a breach of the duty; (3) that the defendant's breach was the legal cause of the plaintiff's harm; and (4) actual damages.  See, e.g., Doe Parents No. 1 v. Dep't of Educ., 100 Hawai'i 34, 68, 58 P.3d 545, 579 (2002).  In this case, we only review the third of these four elements--legal cause--as the circuit court's conclusions with respect to duty and breach have not been raised on appeal and the lower court has not yet ruled on the issue of damages. We also address the application of the discretionary function exception to this case.

### A. Causation Analysis

This court has long required a plaintiff to prove that the defendant's conduct was the legal cause of his or her injuries as one of the prima facie elements of negligence.  See Mitchell v. Branch, 45 Hawai'i 128, 132, 363 P.2d 969, 973 (1961) (adopting the Restatement (First) of Torts § 431's (Am. Law. Inst. 1934) [hereinafter First Restatement] definition of "legal cause" as the "best definition and the most workable test of proximate or legal cause").[3]  "Legal cause" refers to a cause

---

[3]     Although the term "legal cause" is synonymous with the term "proximate cause," this court has generally used the term "legal cause." Estate of Klink ex rel. Klink v. State, 113 Hawai'i 332, 338 n.3, 152 P.3d 504, 510 n.3 (2007).  However, we suggest that the Standing Committee on the Hawai'i Standard Civil Jury Instructions consider whether it would be appropriate to eliminate reference of the term "legal cause" as it may unnecessarily complicate the factual determinations a jury is requested to make.  See Restatement (Third) of Torts: Phys. & Emot. Harm Special Note on Proximate Cause (2010) (discussing the reasons why the Third Restatement does

(continued . . .)

that is legally sufficient to result in liability.  See Black's Law Dictionary 265 (10th ed. 2014) (defining "proximate cause").  Our law does not hold a defendant liable for every possible result of his or her conduct as the causal sequence resulting from a single action could theoretically continue indefinitely and particular policy concerns weigh in favor of limiting liability under certain circumstances.  The range of injuries that a defendant is liable for is sometimes referred to as the scope of the defendant's liability.  Thus, the term "legal cause" embodies both the concept of factual causation and the defendant's scope of liability.[4]  See Restatement (Third) of Torts: Phys. & Emot. Harm Special Note on Proximate Cause (2010) [hereinafter Third Restatement] (explaining that the term "legal cause" encompasses both factual cause and scope of liability).

---

(. . . continued)
not use the "legal cause" terminology in its formulation of the elements of negligence).

    [4]    It is noted that our caselaw often refers to the existence of factual causation as the presence of the requisite "causal connection" or "causal relationship."  See, e.g., Winfrey v. GGP Ala Moana LLC, 130 Hawaiʻi 262, 272, 308 P.3d 891, 901 (2013) (noting that there was no "causal connection" between the defendant's conduct and plaintiff's injuries); Taylor-Rice v. State, 91 Hawaiʻi 60, 76, 979 P.2d 1086, 1102 (1999) ("[D]riving . . . while under the influence of intoxicating liquor does not constitute actionable negligence or contributory negligence unless there is a causal relationship between the intoxication and the accident." (second alteration in original) (quoting McKenna v. Volkswagenwerk Aktiengesellschaft, 57 Haw. 460, 468, 558 P.2d 1018, 1024 (1977))); Mitchell, 45 Haw. at 131, 363 P.2d at 973 ("To impose liability on a negligent party for an injury to another, there must be a causal connection between the negligent act and the injury.").

11

We apply a two-step analysis for determining whether the defendant's conduct was the legal cause of the plaintiff's injuries; the defendant's conduct is the legal cause of the harm to the plaintiff if

> (a) [the actor's] conduct is a substantial factor in bringing about the harm, and
>
> (b) there is no rule of law relieving the actor from liability because of the manner in which his [or her] negligence has resulted in the harm.

Taylor-Rice v. State, 91 Hawai'i 60, 74, 979 P.2d 1086, 1100 (1999) (format altered) (quoting Mitchell, 45 Haw. at 132, 363 P.2d at 973).  This analysis is often referred to in our caselaw as the Mitchell test.  The first prong of the Mitchell test involves a factual determination--whether the defendant's conduct was a substantial factor in bringing about the harm. McKenna v. Volkswagenwerk Aktiengesellschaft, 57 Haw. 460, 465, 558 P.2d 1018, 1022 (1977).  And the second prong involves a legal determination--whether there is any rule of law relieving the actor from liability because of the manner in which the harm resulted from the conduct.  Id.  The requirement that a plaintiff prove legal causation may be better understood as a requirement that the plaintiff prove that the harm was a legal result of the defendant's conduct.

12

1. **The First Mitchell Prong: Whether the defendant's conduct was a substantial factor in bringing about the harm.**

In establishing legal causation, the plaintiff must first establish that the requisite factual, causal connection is present under the first Mitchell prong--"the negligence of the defendant was more likely than not a substantial factor in bringing about the result complained of." See McKenna, 57 Haw. at 465-66, 558 P.2d at 1022. "The inquiry under the first arm of the Mitchell test is essentially whether the act of the defendant was a cause in fact of the plaintiff's injury." Id.

The substantial factor analysis comes from the First Restatement and was adopted in Mitchell. 45 Haw. at 132, 363 P.2d at 973. In applying the first prong of the Mitchell test, the court elaborated that the defendant's conduct "need not have been the whole cause or the only factor"--"[i]t was enough that his [or her] negligence was a substantial factor in causing plaintiff's injuries." Id. at 132, 363 P.2d at 973 (citing First Restatement §§ 431, 433, 435); see also Taylor-Rice, 91 Hawai'i at 74, 979 P.2d at 1100 (same); Knodle v. Waikiki Gateway Hotel, Inc., 69 Haw. 376, 389-90, 742 P.2d 377, 386 (1987) (observing that our law does not require that the event would not have occurred absent the conduct but instead covers the situation where two or more causes contribute to the harm).

The comments to the First Restatement provide insightful commentary on the meaning of "substantial factor." The comments indicate that the term "substantial" was meant to avoid the imposition of liability for conduct that has an insignificant impact in creating the causal circumstances leading to the injuries:

> The word "substantial" is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense in which there always lurks the idea of responsibility, rather than in the so-called "philosophic sense," which includes every one of the great number of events without which any happening would not have occurred.  Each of these events is a cause in the so-called "philosophic sense," yet the effect of many of them is so insignificant that no ordinary mind would think of them as causes.

First Restatement § 431 cmt. a (emphases added).  In distinguishing between substantial and remote causes, the drafters of the First Restatement used the term "substantial factor" to denote that the defendant's conduct may be reasonably regarded as a cause of the injury.  Id.  This is reiterated in a subsequent comment from the First Restatement in which the drafters note that the relevant issue is "whether the defendant's negligence has a substantial as distinguished from a merely negligible effect in bringing about the plaintiff's harm."  Id. § 431 cmt. b.[5]  Thus, the drafters of the First

---

[5]     The comment states the following:

In such a case, the question, whether the defendant's negligence has a substantial as distinguished from a merely

(continued . . .)

14

Restatement did not contemplate that the substantial factor requirement would operate as a significant hurdle to plaintiffs in proving legal causation.

Similarly, many jurisdictions recognize that the term "substantial" denotes a factor that has had more than a negligible or trivial impact on the circumstances leading to the cause of the injury; and, thus, a substantial factor is one that a reasonable person would consider to have contributed to the harm. Raven H. v. Gamette, 68 Cal. Rptr. 3d 897, 901 (Cal. Ct. App. 2007) ("A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor." (quoting Judicial Council of California Civil Jury Instruction § 430 (2007))); Komlodi v. Picciano, 89 A.3d 1234, 1254 (N.J. 2014) ("A substantial factor is one that is 'not a remote, trivial or inconsequential cause.'" (quoting New Jersey's Model Jury Charge (Civil) § 6.13 (May 1998))); Verdicchio v. Ricca,

---

(. . . continued)
negligible effect in bringing about the plaintiff's harm, does not arise if the testimony clearly proves that the harm is from a cause other than the actor's negligence. Indeed, the testimony often makes it clear that, if the defendant's conduct had any effect, the effect was substantial. It is only where the evidence permits a reasonable finding that the defendant's conduct had some effect that the question whether the effect was substantial rather than negligible becomes important.

First Restatement § 431 cmt. b (emphasis added).

843 A.2d 1042, 1056 (N.J. 2004) ("Conduct is a substantial factor if it would 'lead the trier of fact, as a reasonable person, to regard it as a cause, using that word in the popular sense.'" (quoting J.D. Lee & Barry A. Lindahl, Modern Tort Law: Liability & Litigation § 4.03 (West Grp. 2002))); Jeter v. Owens-Corning Fiberglas Corp., 716 A.2d 633, 636 (Pa. Super. Ct. 1998) (noting that the Pennsylvania Supreme Court has "cited with approval the comments to § 431 of the Restatement which defined 'substantial factor' as 'conduct [that] has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense'" (quoting Restatement (Second) of Torts § 431 (1965) [hereinafter Second Restatement]); Lewis v. State, 73 S.W.3d 88, 93 (Tenn. Ct. App. 2001) (distinguishing substantial causes from those that are "merely causes in the 'philosophic sense'"); State v. Rash, 659 N.W.2d 189, 192 (Wis. Ct. App. 2003) ("The phrase 'substantial factor' denotes that the defendant's conduct has such an effect in producing the harm as to lead the trier of fact, as a reasonable person, to regard it as a cause, using that word in the popular sense." (quoting Merco Distrib. Corp. v. Commercial Police Alarm Co., 267 N.W.2d 652, 654 (Wis. 1978))); see also Menne v. Celotex Corp., 861 F.2d 1453, 1459 (10th Cir. 1988) (observing that Nebraska uses the term "substantial" to distinguish from situations where the causation "is so slight as

16

not to be a substantial factor"); <u>Barrett v. Harris</u>, 86 P.3d 954, 961 (Ariz. Ct. App. 2004) (noting that the Arizona Supreme Court has indicated that "if it could be assured that jurors understood the term 'substantial factor' to mean not imaginary, illusive or insignificant, the court would not dispute its use" (citing <u>McDowell v. Davis</u>, 448 P.2d 869, 871–72 (Ariz. 1968))).

This feature of negligence law was further clarified by the <u>Third Restatement</u>. The <u>Third Restatement</u> no longer employs the "substantial factor" terminology, § 36 cmt. a, providing instead for the following limitation on the defendant's liability: "When an actor's negligent conduct constitutes only a trivial contribution to" the circumstances that factually cause the harm under § 27, "the harm is not within the scope of the actor's liability." <u>Id.</u> § 36. Accordingly, instead of using the "substantial factor" formulation, the <u>Third Restatement</u> defines a defendant's scope of liability to exclude liability for injuries under circumstances where the defendant's conduct was only a trivial contribution to producing the harm and there were multiple sufficient causes of the harm.[6]

---

[6] The <u>Third Restatement</u> also no longer uses the term "legal cause," which the previous restatements used to encompass the two distinct inquiries of factual cause and proximate cause. <u>Third Restatement</u> § 26 cmt. a. The comments to the <u>Third Restatement</u> note the "importance of distinguishing clearly between 'factual cause' and 'proximate cause.'" <u>Id.</u> Accordingly, the <u>Third Restatement</u> separates "factual cause" from "proximate cause" (also

(continued . . .)

17

In light of the adoption of the substantial factor analysis in Mitchell for legal causation, this court has rejected jury instructions that deviate from the substantial factor analysis.  In Knodle, the trial court instructed the jury that legal cause of an injury was defined as "that cause which in direct, unbroken sequence, produced the injury, and without which the injury would not have occurred."  69 Haw. at 392, 742 P.2d at 387.  Knodle rejected this instruction because it was essentially "a variant of the 'but for' rule" and thus placed "emphasis on 'factual quantum' rather than 'legal significance' in the circumstances," both of which were contrary to the "substantial factor" test adopted by this court in Mitchell. Id.  Additionally, Knodle expressed concern that the trial court's causation instruction would preclude recovery where harm

---

(. . . continued)
referred to as the defendant's "scope of liability") into separate elements of the negligence tort.  Id.

     The Third Restatement's revised approach to causation "has been embraced by a number of courts and, properly understood, merely represents a shift in terminology."  See Drumgold v. Callahan, 707 F.3d 28, 50 n.15 (1st Cir. 2013) (citing June v. Union Carbide Corp., 577 F.3d 1234, 1240 (10th Cir. 2009); Thompson v. Kaczinski, 774 N.W.2d 829, 837 (Iowa 2009)); see also June, 577 F.3d at 1239 (noting that the Third Restatement's treatment of multiple causes is "more precise, and clearer," than the Second Restatement and that the "ultimate legal standards in the two Restatements are essentially identical for [the court's] purposes"); Otal Invs. Ltd. v. M.V. Clary, 494 F.3d 40, 59 (2d Cir. 2007) (applying the Third Restatement's analysis for factual causation and scope of liability); Reigel v. SavaSeniorCare L.L.C., 292 P.3d 977, 987 (Colo. App. 2011) (agreeing with the Tenth Circuit's decision in June, supra, and holding that Colorado required that plaintiff establish "but-for" causation rather than Colorado's "substantial risk" test); Ford Motor Co. v. Boomer, 736 S.E.2d 724, 730 (Va. 2013) (agreeing with the Third Restatement's elimination of the "substantial factor" terminology).

18

resulted from multiple causes, none of which would have been sufficient to cause the injury on its own. See id. at 389, 742 P.2d at 386. Indeed, such a standard would be contrary to Mitchell's substantial factor analysis--that the defendant's conduct "need not have been the whole cause or the only factor" because it is sufficient if the defendant's negligence "was a substantial factor in causing plaintiff's injuries." Mitchell, 45 Haw. at 132, 363 P.2d at 973. The Knodle court clarified that our law recognizes that a single injury may be the result of multiple contributing causes. See also Montalvo v. Lapez, 77 Hawai'i 282, 288, 884 P.2d 345, 351 (1994) (noting that a jury instruction focusing only on actual causation without the "substantial factor" language was not helpful to the jury because it was an insufficient explanation of the requisite factual causation as defined by Mitchell).

In summary, the term "substantial factor" is not meant to serve as a significant burden to plaintiffs in establishing factual causation. The first prong of the Mitchell test requires that the defendant's conduct was a substantial, as opposed to a negligible or trivial, factor in causing the harm. In other words, a substantial factor is one that a reasonable person would consider to have contributed to the harm. The purpose of the substantial factor requirement is to preclude liability for injuries that are only tenuously connected to the

19

defendant's conduct because the conduct would not be considered by a reasonable person to have contributed to the harm.

2. **The Second Mitchell Prong: Whether any rule of law relieves the actor from liability because of the manner in which the harm resulted from the defendant's conduct.**

The second part of the causation analysis considers whether there are policy concerns or rules of law that would prevent imposition of liability on the negligent party even though the actor's negligence was a substantial factor in bringing about the harm. Estate of Klink ex rel. Klink v. State, 113 Hawaiʻi 332, 362, 152 P.3d 504, 534 (2007). These rules and policy concerns of the second Mitchell prong are based on the manner in which the defendant's negligence caused the harm. Taylor-Rice, 91 Hawaiʻi at 74, 979 P.2d at 1100. Thus, the second Mitchell prong limits the range of injuries a defendant will be held accountable for, and, thus, it is "actually a rule of restrictive liability considered as a question of causation." Mitchell, 45 Haw. at 133, 363 P.2d at 974.

One of the most common rules of law that is applied under the second Mitchell prong is the rule with respect to superseding causes.[7] A separate act that occurs after the

---

[7] Aside from superseding causes, other "rule[s] of law relieving the actor from liability," Taylor-Rice, 91 Hawaiʻi at 74, 979 P.2d at 1100, include cases where "the tortious aspect of the actor's conduct was of a type

(continued . . .)

defendant's culpable conduct will be considered a superseding cause that relieves the defendant of liability if the second act "break[s] the chain of causation." See Taylor-Rice, 91 Hawai'i at 76, 979 P.2d at 1102. Whether a later act is considered to be a superseding cause depends on whether the second act was not foreseeable at the time the defendant's conduct occurred. Id. (observing that a "superseding cause" is considered to "break the chain of causation" where "under no rational interpretation of the evidence[] could the later act of negligence have been reasonably foreseen" (quoting McKenna, 57 Haw. at 466, 558 P.2d at 1022)).

Although the plaintiff bears the burden of proving each of the elements of negligence by a preponderance of the evidence, including both prongs of the Mitchell test, e.g., Doe v. Grosvenor Props. (Haw.) Ltd., 73 Haw. 158, 169, 829 P.2d 512, 518 (1992), the plaintiff will ordinarily satisfy his or her evidentiary burden with respect to legal causation by establishing, by a preponderance of the evidence, that the defendant's conduct was a substantial factor in bringing about

(. . . continued)
that does not generally increase the risk of th[e] harm [that it caused]," Third Restatement § 30; certain applications of the "preexisting conditions and unforeseeable harm" rule, id. § 31 & cmt. c; the limitations to the "rescue doctrine", id. § 32 & cmt. c; the exception to the rule governing the scope of liability for intentional and reckless tortfeasors, id. § 33 & cmt. f; and the limitations to the rule that makes actors liable for enhanced harm due to efforts of third parties to render medical or other aid, id. § 35 & cmt. c. See also Second Restatement §§ 435—61.

the harm.  In other words, although the plaintiff is required to establish both prongs of legal causation as part of its prima facie case, additional facts are typically not involved regarding the second prong.  See Third Restatement § 29 cmt. a ("Although scope of liability is an element of a prima facie case, facts beyond those established for the other elements of the tort are almost never involved.").  This is because the second prong "functions as a limitation on liability in a select group of cases, operating more like an affirmative defense, although formally it is not one."  Id.

Because the second Mitchell prong functions as a rule of restrictive liability, a plaintiff is not required to prove the non-application of every possible rule or policy that could theoretically apply to a particular case.[8]  For example, a

---

[8]    The ICA has previously held "that, although the plaintiff must prove that no other cause is a superseding cause . . ., the 'burden arises only when defendant produces sufficient evidence to raise the issue.'" Keomaka v. Zakaib, 8 Haw. App. 518, 530, 811 P.2d 478, 485–86 (1991) (quoting Leyson v. Steuermann, 5 Haw. App. 504, 517 n.11, 705 P.2d 37, 47 n.11 (1985), overruled on other grounds by Bernard v. Char, 79 Hawai'i 362, 903 P.2d 667 (1995)).  This is similar to the burden-shifting approach that this court adopted in strict products liability cases, in which plaintiffs would "shoulder the ultimate burden of proof," Stender v. Vincent, 92 Hawai'i 355, 373, 992 P.2d 50, 68 (2000), or "more precisely, the risk of non-persuasion," on the issue of substantial change only after the defendant has "allege[d] the substantial changes he [or she] expects [the] plaintiff to try to disprove," id. at 372, 992 P.2d at 67 (quoting Southwire Co. v. Beloit E. Corp., 370 F. Supp. 842, 857 (E.D. Pa. 1974)).  We agree with the ICA's placement of the burden of proof with respect to superseding causes in negligence cases.  Just as plaintiffs in strict products liability cases should not be saddled "with the burden of proving a negative from the outset," so should plaintiffs not have the initial burden as to superseding causes in negligence cases.  Id. at 373, 992 P.2d at 68.  Thus, in negligence cases, the defendant bears the initial burden of introducing "evidence to raise the issue of superseding cause" before the ultimate burden could shift

(continued . . .)

22

plaintiff is not required to prove the absence of a superseding cause as a part of its prima facie case of negligence. Indeed, evidence regarding a superseding cause would only become relevant if the circumstances leading to the injuries in a particular case indicate that a superseding cause may have been involved.

### 3. The circuit court decision in this case.

In reviewing the circuit court's findings and conclusions concerning causation, it is clear that the circuit court misapprehended the relevant legal standard. The court made no finding as to whether the State's negligence was a substantial factor in bringing about the O'Gradys' injuries. Instead, it appears that the circuit court considered whether performance of the State's duty would have completely prevented any injury to the O'Gradys. Additionally, the circuit court may have combined the causation element with the breach element by requiring that the O'Gradys prove additional "wrongful conduct" that caused their injuries, and the court may also have blended the causation element with the duty element by evaluating whether the rockfall was foreseeable.

---

(. . . continued)
to the plaintiff of disproving the alleged superseding cause. Keomaka, 8 Haw. App. at 530, 811 P.2d at 485–86.

### a. Circuit Court's Determination that the O'Gradys Failed to Prove that Performance of the State's Duty Would Have Prevented the Rockfall From Occurring

The circuit court appears to have required the O'Gradys to prove that the State's fulfillment of its duty of care would have prevented the rockfall from occurring. In finding of fact ("FOF") 13, the circuit court found that the State should have undertaken several specific measures "in order to reasonably address the danger of rockfalls adjacent to the State highways."[9] This finding is consistent with the circuit court's conclusion that the State breached its duty of care "by not having a routine, coordinated system of rockfall mitigation at the operational level." The circuit court also found in FOF 20 that the O'Gradys "failed to prove" that, if the State performed its duty by complying with the listed measures in FOF 13, "this would have probably resulted in the [State] taking action to eliminate the rockfall hazard" prior to the O'Gradys' accident. In other words, the circuit court determined that the

---

[9] The circuit court found that in order to reasonably address the danger of rockfalls adjacent to State highways, the Hawai‘i District of the State should have

> (a) had a system of routine, ongoing maintenance, (b) trained its maintenance personnel to recognize potential rockfall hazards, (c) had the ability to undertake rockfall prevention projects which reasonably fell within a roadway maintenance budget, and (d) consulted regularly with a geotechnical engineer who had information regarding the findings of the RHRS project in order to integrate information held between them.

O'Gradys did not prove that the performance of the State's duty would have prevented the rockfall from occurring.

As discussed, the causation element of negligence requires proof that the defendant's conduct was a legal cause of the harm. The first <u>Mitchell</u> prong requires a determination that the defendant's conduct was a substantial factor in bringing about the harm. <u>Taylor-Rice</u>, 91 Hawai'i at 74, 979 P.2d at 1100. Instead of considering whether the State's conduct was a substantial factor in bringing about the harm, the circuit court considered whether the State's performance of its duty would have prevented the rockfall from occurring. The circuit court's analysis is essentially the same as the jury instruction that this court rejected in <u>Knodle</u> in that it frames the issue of legal cause as "that 'without which the injury would not have occurred.'"[10] <u>See</u> <u>Knodle</u>, 69 Haw. at 389, 392, 742 P.2d at 386-87 (rejecting a rule that "the defendant's conduct is not a cause of the event[] if the event would have occurred without it"). A court may not frame its legal causation analysis in a manner that does not allow for multiple causes of a single injury. <u>Id.</u> at 389-90, 742 P.2d at 386-87 (observing that under the <u>Mitchell</u> test, the defendant's conduct "need not have been

_____

[10]    In <u>Knodle</u>, the trial court defined "proximate cause" of an injury as "that cause which in direct, unbroken sequence, produces the injury, and without which the injury would not have occurred." 69 Haw. at 392, 742 P.2d at 387.

the whole cause or the only factor" and that multiple causes may each be a cause even if each cause alone would not have been sufficient to cause the harm (quoting Mitchell, 45 Haw. at 132, 363 P.2d at 973)).

Additionally, the circuit court's apparent assumption that the only means to prevent the accident was to eliminate the rockfall is also flawed because, had the State performed the duties listed in FOF 13, the State may have taken other precautions to avoid the accident such as warning travelers of the potential hazard or closing the road. In any event, the analysis under the first prong of the Mitchell test is whether the State's conduct was a substantial factor in causing the O'Gradys' injuries based on the facts presented. As the Knodle court explained,

> It was error . . . to speak of legal cause as that "without which the injury would not have occurred" in the face of our holding in Mitchell v. Branch, where in affirming a judgment against the defendant we said that "[i]t was enough that his negligence was a substantial factor in causing plaintiff's injuries."

Knodle, 69 Haw. at 392, 742 P.2d at 387 (second alteration in original) (quoting Mitchell, 45 Haw. at 132, 363 P.2d at 973).

The circuit court's analysis may have been influenced by a concern that the State did not have funds available to take appropriate remedial measures, as FOFs 15-19 considered the availability of funds and equipment to eliminate the rockfall

hazard.[11]  The circuit court appears to have reasoned that, even if the State had satisfied its duties, the accident would have occurred anyway because of the lack of funds and equipment to properly remedy the accident site.  However, the State's conduct "need not have been the whole cause or the only factor in bringing about the harm."  See Taylor-Rice, 91 Hawaiʻi at 74, 979 P.2d at 1100; Knodle, 69 Haw. at 389-90, 742 P.2d at 386.  Further, a contention that the State lacked the necessary funds to remedy a particular hazard may be one of the many factors-- each of which is not outcome-determinative on its own--that are relevant to the balancing analysis generally utilized in determining whether to impose a duty to remediate that hazard, but it is not part of the causation analysis.[12]  In this case,

---

[11]  FOFs 15, 16, and 17 concerned the cost of eliminating the rockfall hazard and included the circuit court's assessment that the O'Gradys "failed to present evidence" sufficient for the court to determine the cost of eliminating the rockfall hazard.  In FOF 18, the court found that the O'Gradys "failed to prove" that "the Hawaiʻi District had employees and equipment to eliminate the rockfall hazard."  In FOF 19, the court found that the O'Gradys "failed to prove" that "the Hawaiʻi District had the funds available to engage a private entity to eliminate the rockfall hazard at the Accident Site."

[12]  Pulawa emphasized that this court has considered relevant the following factors in the course of determining whether to impose a duty:

> [W]hether a special relationship exists, the foreseeability of harm to the injured party, the degree of certainty that the injured party suffered injury, the closeness of the connection between the defendants' conduct and the injury suffered, the moral blame attached to the defendants, the policy of preventing harm, the extent of the burden to the defendants and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.

(continued . . .)

the issue of duty is not before us.  See generally Taylor-Rice,
91 Hawai'i at 70, 979 P.2d at 1096 (defining the State's duty
with respect to designing, constructing, and maintaining public
highways).

Thus, the O'Gradys were not required to prove that the
State's performance of its duty would have probably prevented
the accident from occurring or to refute the hypothetical that,
even if the State had satisfied its duties, the accident would
have occurred anyway.  Rather, it was necessary for the O'Gradys
to establish that the State's conduct was a substantial factor
in bringing about their injuries.  To the extent that there were
other causes of the O'Gradys' injuries, the plaintiffs only
needed to prove that the State's tortious conduct was "a
substantial factor in bringing about the harm."  E.g., id. at
74, 979 P.2d at 1100.  Accordingly, the circuit court erred to
the extent it required the O'Gradys to prove that the State's

_____

(. . . continued)
Pulawa v. GTE Hawaiian Tel, 112 Hawai'i 3, 12, 143 P.3d 1205, 1214 (2006)
(alteration in original) (quoting Blair v. Ing, 95 Hawai'i 247, 260, 21 P.3d
452, 465 (2001)).  Notably, the burden to defendants and the consequences of
imposing a duty to exercise care with resulting liability are merely
components of the multifactor analytical framework.  Id.  Pulawa also
reiterates that the determination of whether duty is owed requires "the
considerations of policy which favor the [plaintiff's] recovery against those
which favor limiting the [defendant's] liability" and that "[t]he question of
whether one owes a duty to another must be decided on a case-by-case basis."
Id. (alterations in original) (quoting Blair, 95 Hawai'i at 259–60, 21 P.3d at
464–65); see also Molfino v. Yuen, 134 Hawai'i 181, 184-85, 339 P.3d 679, 682-
83 (2014) ("Whether a duty exists is a 'question of fairness that involves a
weighing of the nature of the risk, the magnitude of the burden of guarding
against the risk, and the public interest in the proposed solution'" (quoting
Hao v. Campbell Estate, 76 Hawai'i 77, 80, 869, P.2d 216, 219 (1994))).

satisfactory performance of its duties would have likely resulted in elimination of the rockfall hazard.  By extension, the circuit court's FOFs 18, 19, and 20 are clearly erroneous as they appear to be based on a misapprehension of the law.

### b. Circuit Court's Conclusion that the O'Gradys Failed to Prove that the State's Wrongful Conduct Caused the Injuries

The circuit court may also have combined the causation element with the breach element.  In FOF 21, the circuit court concluded that the O'Gradys "failed to prove that wrongful conduct on the part of the State, if any, was a substantial factor in causing the March 8, 2007 accident and their consequent injuries."  Thus, the circuit court's finding may have been based on an understanding that the O'Gradys were required to prove that the State engaged in "wrongful conduct" and that this "wrongful conduct" was a substantial factor with respect to the O'Gradys' injuries.  However, under Hawai'i law, the State may be held liable for breach of a duty to mitigate a hazard without a showing of "wrongful conduct."  For example, in Klink, the State breached its "duty to maintain the highway in a reasonably safe condition, which included the duty to mitigate and warn of known hazards."  113 Hawai'i at 356-61, 152 P.3d at 528-33.  The Klink court determined that the trial court "clearly erred when it found that the State's failure to install [the necessary corrective measure], to take other remedial

29

action, or to warn adequately of the severity of the hazard faced by motorists on the bypass during moderate to heavy rains was not a substantial factor in bringing about" the plaintiff's death.  Id. at 362, 152 P.3d at 534.  Thus, the appropriate analysis was whether the State's breach was a substantial factor in bringing about the harm, not whether affirmative "wrongful conduct" on the State's part was a substantial factor in bringing about the harm.  See also Kaho'ohanohano v. Dep't of Human Servs., 117 Hawai'i 262, 306, 178 P.3d 538, 582 (2008) (affirming circuit court finding that the Department of Human Services was the legal cause of plaintiff's injuries based on its failure to conduct a reasonable investigation into a report of child abuse); Taylor-Rice, 91 Hawai'i at 75, 979 P.2d at 1101 (determining that the circuit court did not err in finding factual causation because the State's breach of its duty to maintain a guardrail in a reasonably safe condition could be deemed a substantial factor in causing the plaintiff's injuries).  Accordingly, to the extent that the circuit court required the O'Gradys to prove an affirmative, wrongful act in addition to the State's breach, it was error, and the circuit court's FOF 21 is clearly erroneous.

### c. Circuit Court's Finding That the O'Gradys Failed to Establish the Imminence of the Rockfall

The circuit court may have also overlapped the issue of causation with the issue of whether a duty was owed. In FOF 14, the circuit court found that the O'Gradys failed to establish the foreseeability of the rockfall:

> However, Plaintiffs have failed to prove that from December 22, 2004 until March 8, 2007, it was reasonably foreseeable that a rockfall at the Accident Site was so imminent that it was necessary for the State to immediately address the rockfall potential.

Since the circuit court also concluded that the State breached its duty to the O'Gradys to maintain the highway so that it was reasonably safe from rockfalls, it appears that the circuit court considered FOF 14 as relevant to the issue of causation.[13]

Foreseeability of the risk associated with one's conduct is an issue that relates to the duty of care. In Pulawa v. GTE Hawaiian Tel, this court discussed the concept of foreseeability in the context of duty: "The test of foreseeability 'is whether there is some probability of harm sufficiently serious that a reasonable and prudent person would take precautions to avoid it.'" 112 Hawai'i 3, 11-14, 143 P.3d 1205, 1213-16 (2006) (quoting Knodle, 69 Haw. at 388, 742 P.2d at 385 (1987)). Thus, foreseeability, as it relates to duty, is

---

[13] The O'Gradys' opening brief indicates that this finding concerns the issue of causation, and it does not appear that the State's answering brief disagrees.

a question of law that takes into account the presence and extent of the risks associated with particular conduct. Id.; see also Third Restatement § 7 cmt. j ("A no-duty ruling represents a determination, a purely legal question, that no liability should be imposed on actors in a category of cases.").

Foreseeability in the context of legal causation is an issue that arises by application of the second prong of the Mitchell test; it is not relevant to the first prong of the Mitchell test. For example, the question of foreseeability arises with respect to a superseding or intervening cause, which raises the issue of whether a subsequent act or occurrence in the causal sequence was foreseeable. If the subsequent act or occurrence was not reasonably foreseeable under any rational interpretation of the evidence, then it is considered to "break the chain of causation," and the defendant is relieved of liability. Taylor-Rice, 91 Hawaiʻi at 76, 979 P.2d at 1102 (quoting McKenna, 57 Haw. at 466, 558 P.2d at 1022). Thus, assuming that the defendant's conduct breached a duty of care to the plaintiff and that this conduct was a substantial factor in causing the plaintiff's injuries, the remaining issue is whether a defendant should be relieved of liability because a subsequent act or occurrence was not reasonably foreseeable under any rational view of the evidence. Id.; see Third Restatement § 34 cmt. e; see also Pulawa, 112 Hawaiʻi at 13, 143 P.3d at 1215

(noting that foreseeability that pertains to legal cause "relates to remoteness rather than the existence of a duty").

Accordingly, as FOF 14 concerns the foreseeability of the risks associated with the defendant's conduct (i.e., that the plaintiffs failed to prove the "rockfall at the Accident Site was so imminent that it was necessary for the State to immediately address the rockfall potential"), it is not relevant to the issue of causation. In other words, the circuit court's reference to the imminence of the rockfall relates to the foreseeability of the risks associated with the State's conduct, and any such consideration of the foreseeability of the risks relates to the issue of duty and not causation. Accordingly, to the extent the court considered FOF 14 as related to the question of causation, it was error.[14]

Further, there does not appear to be any superseding or intervening cause asserted by the State that would relieve it from liability under the second prong of the Mitchell test. The court in Klink determined that the State's breach of its duty of care to maintain the roads in a reasonably safe condition at the site of the accident was the legal cause of a motorist's

---

[14] It is noted that our law does not support the proposition that a plaintiff must prove that a risk is imminent in order for a reasonably prudent person to protect against it. The question of foreseeability as it relates to duty "is whether there is some probability of harm sufficiently serious that a reasonable and prudent person would take precautions to avoid it." Pulawa, 112 Hawai'i at 12, 143 P.3d at 1214.

injuries where water runoff created sheet flow. Klink, 113 Hawai'i at 361-63, 152 P.3d at 533-35. In considering the second arm of the Mitchell analysis--whether there were any policy concerns or rules of law that would prevent imposition of liability--the court observed that the State is not the insurer of absolute personal safety on highways. Id. at 362, 152 P.3d at 534. However, Klink concluded that the harm fell within the State's scope of liability, noting that the State did not allege any contributory negligence or any other superseding cause that would relieve the State of liability. Id.

Similar to Klink, the evidence in this case does not indicate that there is contributory negligence or any superseding or intervening event that would relieve the State of liability. Nonetheless, the State argues that it should be relieved of any liability for its breach of its duty of care because it has articulated a reasonable justification for the delay in mitigating the hazard. The State argues that this case is distinguishable from Klink because there are other sites on the Island of Hawai'i that are more dangerous than the accident site, the State lacked the necessary funding and resources to mitigate the hazard, and the State "conducted regular highway inspections and received other reports of potential but not necessarily imminent rockfall hazards." These justifications, however, relate to whether the State owed a duty of care and

whether that duty was breached, and the circuit court's conclusions as to duty and breach have not been raised on appeal. See Pulawa, 112 Hawai'i at 12, 143 P.3d at 1214 (noting factors a court considers in determining whether to impose a duty including "the moral blame attached to the defendants," "the policy of preventing harm," and "the extent of the burden to the defendants and consequences to the community of imposing a duty to exercise care with resulting liability for breach").

As stated, the second Mitchell prong involves the application of various rules and policy concerns to limit the defendant's liability because of the manner in which the defendant's conduct caused the harm. Taylor-Rice, 91 Hawai'i at 74, 979 P.2d at 1100. The analysis of the second Mitchell prong is not an opportunity to revisit the duty and breach elements of negligence. Rather, the second Mitchell prong will limit the range of injuries a defendant is held liable for based on rules of law that apply because of the circumstances surrounding the causation of the injuries. The causation analysis is thus focused on the injuries and the manner in which the injuries occurred. Accordingly, the State's arguments concerning the reasonableness of its conduct and the foreseeability of the associated risks are not relevant to the issue of legal causation.

### d. Conclusion Regarding Causation Analysis

For the reasons discussed, the circuit court clearly misapprehended the relevant legal standard with regard to whether the State's conduct was the legal cause of the O'Gradys' injuries. Accordingly, the circuit court erred to the extent it determined the State was not liable because the State's breach of its duty was not the legal cause of the O'Gradys' injuries. We thus vacate the circuit court's decision and remand the case to the circuit court for application of the proper legal standard.

As this court has previously observed, the State "is not the insurer of the safety of travelers over the highways of the State," but the State has a duty "to design and construct its highways in such a manner as to make them reasonably safe for their intended use" and to "maintain them in a reasonably safe condition." Klink, 113 Hawai'i at 362, 152 P.3d at 534 (quoting Pickering v. State, 57 Haw. 405, 409, 557 P.2d 125, 128 (1976)). In this case, the circuit court determined that this responsibility includes "the duty to exercise ordinary care to maintain the areas adjacent to the highway so that the highway is reasonably safe from rockfalls." The circuit court also determined that the State "breached this duty of care by not having a routine, coordinated system of rockfall mitigation at the operational level in the Hawai'i District." Therefore, on

36

remand, the circuit court is to determine whether the State's breach of its duty was the legal cause, as discussed herein, of the O'Gradys' injuries.

### B. Discretionary Function Exception

The O'Gradys assert that the circuit court erred in relying on the discretionary function exception in its decision. Contrary to the O'Gradys' assertion, although the circuit court discussed the discretionary function exception in its COLs, it appears that the circuit court did not rely on this exception in reaching its conclusion that the State was not liable to the O'Gradys.[15]  In light of our remand to the circuit court, we address the circuit court's observations regarding the discretionary function exception and consider its applicability in this case.[16]  We initially note that the application of the

---

[15]    We interpret the circuit court's conclusions regarding the discretionary function exception to be observations on the part of the circuit court as it did not ultimately determine whether the exception applied in this case.  Specifically, the circuit court concluded that "[o]rdinary, everyday maintenance of areas adjacent to a State highway in order to prevent or mitigate rockfalls onto the highway is an operational activity."  The court also observed that a decision to undertake a large-scale rockfall prevention or mitigation project "may fall within the discretionary function exception" if it is contingent on a specific legislative appropriation; however, the court also noted that "the State should not escape liability under the discretionary function exception merely by choosing to address rockfalls onto a State highway only with large-scale projects and declining to use routine, everyday maintenance to address the risk."  We note that the State did not cross-appeal the circuit court's conclusions regarding the discretionary function exception.

[16]    The O'Gradys filed a motion in limine in the circuit court seeking preclusion of the discretionary function exception at trial, and the court denied the motion.  The O'Gradys argue that the circuit court abused its discretion in denying their motion in limine.  We note that the circuit court properly denied the O'Gradys' motion in limine, as the motion in this

(continued . . .)

discretionary function exception operates separately from the elements of negligence and entails a separate analysis. See Taylor-Rice v. State, 91 Hawai'i 60, 77, 979 P.2d 1086, 1103 (1999) (discussing the discretionary function exception separately from the elements of negligence).

Under the State Tort Liability Act, the State waives its immunity for tort liability. See HRS § 662-2 (1993).[17] The State Tort Liability Act includes several exceptions to its applicability, including for claims based on "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state officer or employee, whether or not the discretion involved has been abused." HRS § 662-15(1) (Supp. 2004).[18] The purpose of this

_____

(. . . continued)
case was akin to a motion for summary judgment or other dispositive motion. See Kuroda v. Kuroda, 87 Hawai'i 419, 427, 958 P.2d 541, 549 (App. 1998) (discussing the appropriate purpose of a motion in limine).

[17]     HRS § 662-2 provides, "The State hereby waives its immunity for liability for the torts of its employees and shall be liable in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."

[18]     HRS § 662-15(1) provides that the State Tort Liability Act shall not apply to the following:

> Any claim based upon an act or omission of an employee of the State, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation is valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state officer or employee, whether or not the discretion involved has been abused . . . .

exception to liability is to "protect the decision-making processes of state officials and employees which require evaluation of broad public policies." Taylor-Rice, 91 Hawai'i at 77, 979 P.2d at 1103 (quoting Nakahira v. State, 71 Haw. 581, 583, 799 P.2d 959, 961 (1990)).

The exceptions listed in HRS § 662-15 are exceptions to the State's liability rather than a retention of sovereign immunity over certain claims, and consequently, the exceptions do not operate to withdraw subject-matter jurisdiction from the courts.[19] See Schwartz v. State, 136 Hawai'i 258, 263, 361 P.3d 1161, 1166 (2015) ("[S]ubject-matter jurisdiction is fundamental to a court's power to act on the merits of a case from the outset of the action; it may be challenged at any time, but jurisdiction does not vacillate during the course of a case depending on the particulars of the matter as it develops."); State v. Zimring, 52 Haw. 477, 478, 479 P.2d 205, 206 (1970) (holding that the trial court erred in its order of dismissal for failure to state a claim based on the discretionary function exception). Thus, the discretionary function exception operates

---

[19] The Hawai'i State Tort Liability Act provides a general waiver of its immunity for liability for the torts of its employees, see HRS § 662-2, and the circuit and district courts have original jurisdiction over such claims, see HRS § 662-3 (1993). The exceptions provided for in HRS § 662-15 define the scope of the application of the Hawai'i State Tort Liability Act and, consequently, the scope of tort claims that may be brought against the State.

similarly to an affirmative defense in that it is separate from the elements of negligence and relieves the State from liability. Zimring, 52 Haw. at 478, 479 P.2d at 206 (citing Stewart v. United States, 199 F.2d 517, 520 (7th Cir. 1952))[20] (concluding that any exceptions from the State's waiver of sovereign immunity "is a matter of defense"); see also 61A Am. Jur. 2d Pleading § 300 (2010) ("[A]n affirmative defense is the defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true.").

Generally, the defendant has the burden of proving all affirmative defenses. U.S. Bank Nat'l Ass'n v. Castro, 131 Hawai'i 28, 41, 313 P.3d 717, 730 (2013). Recognition of the burden on the State to prove application of the discretionary function exception maximizes both the purpose of the discretionary function exception and the primary policy of the State Tort Liability Act to compensate victims of negligent State conduct. See Breed v. Shaner, 57 Haw. 656, 665, 562 P.2d 436, 442 (1977) (noting that the State Tort Liability Act should be liberally construed to effectuate its purpose of compensation). Additionally, the State is in the best position

---

[20]     Stewart held that if the government desires to rely on the discretionary function exception, it has a right to do so in defense of the action, "providing such defense is aptly pleaded and proven." 199 F.2d at 520.

to provide relevant evidence with regard to its decision-making, and a rule that requires the plaintiff to prove the absence of any policy consideration would not be practicable. Thus, the State bears the burden to assert and prove the application of the discretionary function exception to liability under the State Tort Liability Act. See Parrott v. United States, 536 F.3d 629, 634–35 (7th Cir. 2008) (concluding that the discretionary function exception operates as an affirmative defense to the Federal Tort Claim Act).[21]

The issue that is presented in this case is whether the State has immunity from claims for its failure to have a routine, coordinated system of rockfall mitigation at the

---

[21] Many other jurisdictions consider similar exceptions to be affirmative defenses, although there is some disagreement. 14 Charles Alan Wright et al., Federal Practice and Procedure: Jurisdiction and Related Matters 3d § 3658 (4th ed. 2015) ("The plaintiff bears the initial burden of alleging subject matter jurisdiction under the FTCA, but generally it is held that the Government bears the burden of proving the applicability of the discretionary function exception, although there is disagreement."); see also Keller v. United States, 771 F.3d 1021, 1023 (7th Cir. 2014) ("The discretionary function exception is an affirmative defense to liability under the FTCA that the government must plead and prove."); Cestonaro v. United States, 211 F.3d 749, 756 (3d Cir. 2000) ("The United States has the burden of proving the applicability of the discretionary function exception." (quoting Nat'l Union Fire Ins. v. United States, 115 F.3d 1415, 1417 (9th Cir. 1997))); Anderson v. State, 692 N.W.2d 360, 364 (Iowa 2005) ("The discretionary function immunity is an affirmative defense raised by the defendant, and the party asserting immunity has the burden to prove the immunity."); Parker v. Lancaster Cty. Sch. Dist. No. 001, 591 N.W.2d 532, 539 (Neb. 1999) ("We have held that this 'discretionary function exemption' is an affirmative defense which must be asserted by answer."). But see Molchatsky v. United States, 713 F.3d 159, 162 (2d Cir. 2013) ("Plaintiffs bear the initial burden to state a claim that is not barred by the [discretionary function exception]."); Welch v. United States, 409 F.3d 646, 651 (4th Cir. 2005) ("[I]t is the plaintiff's burden to show that an unequivocal waiver of sovereign immunity exists and that none of the statute's waiver exceptions apply to his particular claim.").

operational level.  Because we recognize the need to define the scope of the discretionary function exception on a case-by-case basis, we do not consider the circuit court's observations with respect to large-scale remediation projects as that issue is not presented by the appeal in this case.  See Taylor-Rice, 91 Hawai'i at 77, 979 P.2d at 1103.

In determining whether a State action falls within the discretionary function exception, we consider whether the challenged conduct involves the "effectuation of broad public policy" as opposed to "routine," "operational level activity." Id. (internal quotation marks omitted) (quoting Tseu ex rel. Hobbs v. Jeyte, 88 Hawai'i 85, 88, 962 P.2d 344, 347 (1998)). The exercise of some discretion on the part of a State official is not necessarily indicative that the exception applies, and our cases have focused more on distinguishing broader policy decisions from daily, operational ones.  See Taylor-Rice, 91 Hawai'i at 79, 979 P.2d at 1105 (citing Rogers v. State, 51 Haw. 293, 296, 459 P.2d 378, 381 (1969)).  Additionally, we interpret the State Tort Liability Act in light of its purpose "to compensate the victims of negligent conduct of state officials and employees in the same manner and to the same extent as a private person in like circumstances."  Breed, 57 Haw. at 665, 562 P.2d at 442 (citing Rogers, 51 Haw. at 293, 459 P.2d at 378).

In a previous decision concerning the design of State highways, we distinguished between broad policy decisions, such as a decision not to build a prison, and operational government affairs, such as where to place road signs. See Taylor-Rice, 91 Hawai'i at 78, 979 P.2d at 1104 (discussing the analysis in Breed); see also Rogers, 51 Haw. at 297, 459 P.2d at 381 (noting a federal decision that determined that "the decision to construct a post office building involved discretion but the omission to install handrails was an operational level act"); Julius Rothschild & Co. v. State, 66 Haw. 76, 80, 655 P.2d 877, 881 (1982) (holding that the discretionary function exception applies to the State's decision of whether to replace or reconstruct a bridge since "[i]t would require a weighing of priorities at the higher levels of government, and would surely entail evaluations based on financial, political and economic considerations"). Breed noted that "such matters as the kinds of road signs to place and where to place them, and which center line stripings to repaint and when to repaint them, did not require evaluation of policies but involved implementation of decisions made in everyday operation of governmental affairs." 57 Haw. at 666, 562 P.2d at 442 (describing the holding in Rogers, 51 Haw. at 297, 459 P.2d at 381). In rejecting the principle that the designing of a highway would always involve evaluation of broad policy factors, Breed expressed concern that

such a generalization would afford the State protection for negligence not encompassed by the discretionary function exception:

> [W]e are of the opinion that the decisions made in designing a highway do not always fall in this category. A curve may be placed in a road to simply get around an obstacle. In this situation further facts must be adduced on the record to show that the decision to include the curve or other design feature involved the evaluation of broad policy factors before the court can decide that the discretionary function exception applies.

Id. at 667, 562 P.2d at 443.

In Taylor-Rice, we rejected the argument that the decision to improve guardrails involved the evaluation of broad policy considerations. 91 Hawai'i at 78, 979 P.2d at 1104. Taylor-Rice distinguished between the State's broader policy regarding guardrails from the implementation of that policy, noting that the State's established policy dictated that the guardrails should have been improved. Id. It was also noted that the post-accident upgrade to the guardrail cost $11,849.83 in maintenance funds and could have also been included in a more expensive resurfacing project undertaken by the State. Id.

This case concerns the State's failure to have a routine, coordinated system of rockfall mitigation at the operational level. The State's failure was a breach of the State's duty "to exercise ordinary care to maintain the areas adjacent to the highway so that the highway is reasonably safe from rockfalls." It appears that such rockfall mitigation

44

efforts at the <u>operational level</u> would not involve the consideration of broad public policies. While it is possible that certain decisions with regard to how to fulfill the State's duty to maintain the highway so that it is reasonably safe from rockfalls may fall within the discretionary function exception, this case expressly concerns a routine system at the operational level, and the State has not adduced evidence to demonstrate that the lack of such an operational system involved an exercise of discretion based on broad policy considerations.

For the reasons discussed, the State's breach of its duty of care "by not having a routine, coordinated system of rockfall mitigation at the operational level" does not fall within the discretionary function exception. Additionally, the O'Gradys challenge FOFs 6 and 15-17, which appear to relate to whether the lack of a remediation project to eliminate the rockfall hazard fell within the discretionary function exception. As mentioned, the issue presented in this case with respect to the discretionary function exception is whether the State has immunity from claims for its failure to have a routine, coordinated system of rockfall mitigation at the operational level, and the lack of any large-scale remediation project to eliminate the rockfall hazard has not been raised. Thus, these findings are not relevant to whether the

discretionary function exception applies in the present appeal.[22] Additionally, FOFs 15-17 erroneously require the O'Gradys to prove the inapplicability of the discretionary function exception; as discussed, the State bears the burden of asserting and proving the application of the discretionary function exception. In light of the evidence presented, the State has not established that it is relieved from liability under the discretionary function exception with regard to the duty recognized by the circuit court in this case.

### III. CONCLUSION

For the reasons discussed above, the circuit court's December 11, 2014 "Second Amended Final Judgment" is vacated, and the case is remanded to the circuit court for further proceedings consistent with this opinion.

| | |
|---|---|
| Ronald G. Self and Rebecca A. Copeland for appellants | /s/ Mark E. Recktenwald |
| | /s/ Sabrina S. McKenna |
| Caron M. Inagaki, Randolph R. Slaton, Henry S. Kim, and Robin M. Kishi for appellees State of Hawaiʻi and State of Hawaiʻi Department of Transportation | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |
| | /s/ Jeffrey P. Crabtree |



---

[22] It is noted that these findings also have no relevance to the question of legal causation as they concern the reasonableness and intent of the State's conduct, rather than the circumstances leading to the O'Gradys' harm.