**Electronically Filed
Supreme Court
SCWC-11-0000594
29-JUN-2018
07:58 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

JASON KAWAKAMI,
Individually and on behalf of all others similarly situated,
Petitioner/Plaintiff-Appellant/Cross-Appellee

vs.

KAHALA HOTEL INVESTORS, LLC, dba KAHALA HOTEL AND RESORT
Respondent/Defendant-Appellee/Cross-Appellant.

_____

SCWC-11-0000594

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-11-0000594; CIVIL NO. 08-1-2496)

JUNE 29, 2018

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY WILSON, J.

This class action concerning Hawaii's hotel and restaurant service charge law returns to us for the second time. See Kawakami v. Kahala Hotel Inv'rs, LLC, 134 Hawai'i 352, 341 P.3d 558 (2014). Its return presents us once again with the task of interpreting Hawai'i Revised Statutes (HRS) § 481B-14

(2000).[1]  For the reasons explained below, we vacate the

Intermediate Court of Appeals' affirmance of the circuit court's

grant of judgment as a matter of law (JMOL) and reinstate the

circuit court's earlier grant of partial summary judgment to

plaintiff Jason Kawakami as to the defendant Kahala Hotel and

Resort's liability under HRS § 481B-14.  We also reinstate the

jury's special verdict in favor of Kawakami on legal causation

and the amount of damages in the trial on damages that followed

the grant of partial summary judgment.  We remand to the circuit

court for determination of additional damages and fees under

Hawaii's statute governing unfair or deceptive acts or

practices.  HRS Chapter 480.

## I. Background

Jason Kawakami (Kawakami)[2] held his wedding reception

at the Kahala Hotel and Resort (the hotel) in July 2007.[3]  The

---

[1]  In 2007, the statute required that any hotel or restaurant "that applies a service charge for the sale of food or beverage services . . . shall distribute the service charge directly to its employees as tip income or clearly disclose to the purchaser of the services that the service charge is being used to pay for costs or expenses other than wages and tips of employees."  HRS § 481B-14.  The statute's requirements were later extended to hotels that apply a service charge for porterage services.  HRS § 481B-14 (2015).

[2]  Kawakami is the class representative.  Except where the context requires, when we refer to him, we refer also to the class.

[3]  For more extended recitations of the facts, see our prior opinion, Kawakami, 134 Hawai'i at 354-56, 341 P.3d at 560-62, and the two unpublished opinions of the Intermediate Court of Appeals (ICA).  Kawakami v. Kahala Hotel Inv'rs, LLC (Kawakami I), CAAP-11-0000594, 133 Hawai'i 451, 330 P.3d 389 (App. March 25, 2014) (mem.), vacated, 134 Hawai'i 352, 341 P.3d 558 (continued . . .)

hotel collected a 19% service charge on the purchase of food and beverages for his reception, but the hotel failed to distribute 100% of the funds from the service charge directly to its service employees as tip income.  Instead, the hotel retained 15% of those funds as what it termed "the management share," then reclassified those funds and used them to pay for the banquet employees' "wages."  The "event agreement," a contract used by the hotel for large group events, contained no disclosure that a portion of the service charge would be diverted to the hotel, rather than directly distributed to the banquet employees as tip income.  A section of the event agreement, titled "Service Charge and Tax," stated only that "[a]ll food and beverage prices are subject to a 19% service charge."  No other disclosure was made to Kawakami that a portion of the service charge would not be directly distributed to the banquet employees as tips.

Kawakami filed a lawsuit on behalf of himself and other customers who paid a service charge to the hotel in connection with the purchase of food or beverages.  He claimed the hotel's conduct was an unfair or deceptive act or practice (UDAP) under HRS § 481B-14 and HRS § 480-2.  Kawakami moved for summary judgment "on liability" because the undisputed facts

(. . . continued)
(2014); Kawakami v. Kahala Hotel Inv'rs, LLC (Kawakami II), CAAP 11-0000594, 136 Hawai'i 543, 364 P.3d 251 (App. Dec. 23, 2015)(mem.)

3

established that the hotel violated HRS § 481B-14 and HRS § 480-2.  The circuit court granted summary judgment as to liability only, not remedies or damages, ruling that under HRS § 481B-14 the hotel had "a duty to disclose" to Kawakami that a portion of the service charge would become the property of the hotel rather than paid to its employees as tip income.[4]  A jury trial to determine damages followed.  The jury found that the hotel was the legal cause of injury to the plaintiff class and awarded $269,114.73 to the class, corresponding to the amount of the combined service charges retained by the hotel as "the management share."

A little more than a month after the verdict, the hotel renewed its prior motions for JMOL, which had been denied by the circuit court.  This time the circuit court granted the motion for JMOL on the theory there had been insufficient evidence the plaintiffs suffered injury as a result of the hotel's violation of HRS § 481B-14.  The circuit court stated that it was "struggling to understand how the Management's Share . . . constitutes financial or economic loss or harm to Plaintiffs."  The court focused on the apparent lack of an economic loss to the plaintiffs relating to the hotel's failure to distribute the funds from the service charge in the manner

_____

[4]    The Honorable Gary W.B. Chang presided over the circuit court proceedings.

4

required by the statute. That failure, the court stated, "did not cause Plaintiffs to pay any additional sums over and above their contractual obligation to pay the service charge or any other additional compensation." Yet, the court observed, the "jury awarded as damages to Plaintiffs a sum that appears to be equal to the amount of the Management's Share of the service charge."

On appeal the ICA vacated the circuit court's order granting Kawakami's motion for summary judgment and held instead that summary judgment should have been granted in favor of the hotel. The ICA reasoned that because the hotel ultimately distributed the management share of the service charge as wages, its actions were in compliance with the language of HRS § 481B-14 and no disclosure to Kawakami was required. Kawakami I, mem. op. at 4-5.

On certiorari in Kawakami I, we rejected the ICA's reasoning. Instead, we recognized "the well-settled duty of hotels and restaurants" under the statute "to either distribute the entirety of the service charge directly to non-management banquet employees who served the consumers as 'tip income,' or to disclose its practice of withholding the service charge[.]" Kawakami I, 134 Hawai'i at 357, 341 P.3d at 563; id. (characterizing this statutory duty as assisting "a well-informed consumer" in choosing whether to leave a tip for the

5

employees as a reward for their service).  We held that under

HRS § 481B-14,

> a hotel or restaurant that applies a service charge for food or
> beverage services must either distribute the service charge
> directly as tip income to the non-management employees who
> provided the food or beverage services, or disclose to its
> customers that the service charges are not being distributed as
> tip income.

Kawakami I, 134 Hawaiʻi at 354, 341 P.3d at 560.  Accordingly, we

vacated the ICA's judgment on appeal and remanded to the ICA.

We directed the ICA to address on remand Kawakami's argument

that the circuit court erred when it granted JMOL to the hotel

on the theory that Kawakami suffered no injury as a result of

the hotel's actions.  Id. at 360, 341 P.3d at 566.

On remand from our decision in Kawakami I, the ICA

affirmed the circuit court's grant of JMOL to the hotel because,

in the ICA's view, Kawakami "failed to establish that he was

injured, financially or *otherwise*, as a result of Kahala Hotel's

deceptive trade practices[.]"  Kawakami II, mem. op. at 1.  The

ICA acknowledged that a plaintiff alleging an unfair or

deceptive act or practice need not show strictly "economic loss"

in order to satisfy the consumer "injury" requirement of HRS §

480-13(b).  Kawakami II, mem. op. at 3.  The ICA nonetheless

concluded that Kawakami failed to establish that he was injured

even by the "less stringent standard" of non-economic injury.

Id.  With respect to Kawakami's alternative claim of a contract-

based injury, the ICA rejected that claim largely on the grounds

6

that "the required disclosure under HRS § 481B-14 need not take the form of a written provision in an event contract, nor must it necessarily occur *before* parties enter into the contract," and therefore there was no breach of contract.  Kawakami II, mem. op. at 5.  See also id., mem. op. at 4 (stating that "benefit-of-the-bargain damages are only available when there has been a breach of contract.").  As a result, the ICA affirmed the circuit court's grant of JMOL.

On certiorari, Kawakami argues that the ICA erred by holding that no contract-based or UDAP-based injury occurred. He also argues that the ICA erred in affirming the circuit court's order denying plaintiffs' motion in limine no. 1, which sought to preclude the admission of certain evidence.

## II.  Standards of Review

### A.    Motions for Judgment as a Matter of Law

"It is well settled that a trial court's rulings on motions for judgment as a matter of law are reviewed *de novo*. When we review the granting of a motion for judgment as a matter of law, we apply the same standard as the trial court.  A motion for judgment as a matter of law may be granted only when after disregarding conflicting evidence . . . and indulging every legitimate inference which may be drawn from the evidence in the non-moving party's favor, it can be said that there is no evidence to support a jury verdict in his or her favor."

7

Miyamoto v. Lum, 104 Hawai'i 1, 6-7, 84 P.3d 509, 514-15 (2004) (internal citations and braces omitted).

**B.      Motions in Limine**

Because "the granting or denying of a motion in limine is within the trial court's inherent power to exclude or admit evidence, we review the court's ruling for the abuse of discretion standard." State v. Kealoha, 95 Hawai'i 365, 379, 22 P.3d 1012, 1026 (App. 2000)(internal citations omitted). However, when the trial court's order granting a motion in limine is an evidentiary decision based upon relevance, the standard of review is the right/wrong standard. Ass'n of Apt. Owners of Wailea Elua v. Wailea Resort Co., Ltd., 100 Hawai'i 97, 110, 58 P.3d 608, 621 (2002).

**C.      Statutory Interpretation**

Appellate courts review questions of statutory interpretation de novo. Bhakta v. Cty. of Maui, 109 Hawai'i 198, 208, 124 P.3d 943, 953 (2005). "When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself." Id. (internal citations omitted).

**III.  Discussion**

We consider first the issue of Kawakami's contract-based damages, then the issue of Kawakami's UDAP-based damages,

8

and finally the issue whether Kawakami's motion in limine no. 1 was properly denied by the circuit court.

## A. Kawakami and the Class Sustained Contract-based Damages

"Contract law is designed to enforce the expectancy interests created by agreement between the parties[.]" Ass'n of Apartment Owners of Newtown Meadows ex rel. its Bd. of Directors v. Venture 15, Inc., 115 Hawai'i 232, 291, 167 P.3d 225, 284 (2007)(citation omitted); Restatement (Second) of Contracts § 347 (Am. Law Inst. 1981) cmt. a (stating that contract-based damages ordinarily center on "the injured party's expectation interest"). See also Joseph M. Perillo, Calamari and Perillo on Contracts § 14-4 (6th ed. 2009)("Our legal system starts with the premise that the expectation interest (perhaps better called 'the performance interest') of contracting parties is the primary interest deserving protection."); Daniel Friedmann, The Performance Interest in Contract Damages, 111 Law Q. Rev. 628, 629 (1995)("The essence of contract is performance. Contracts are made in order to be performed.").[5]

Once a court concludes a breach of contract has occurred, the court ordinarily "enforces the broken promise by

___

[5] The expectation interest is one of three interests generally recognized in the law of contracts; the other two are the reliance interest and the restitution interest. Restatement (Second) of Contracts § 344 (explaining that judicial remedies under the Restatement "serve to protect one or more" of three interests of a promisee, the "expectation interest," the "reliance interest," and the "restitution interest"); id. (explaining the distinctions between the three interests). See also Restatement (Third) of Restitution and Unjust Enrichment (Am. Law Inst. 2011).

protecting the expectation that the injured party had when he made the contract."  Restatement (Second) of Contracts § 344 cmt. a.  Thus, contract damages generally attempt to give the injured party "the benefit of the bargain" by awarding a sum of money that will, to the extent possible, put the injured party "in as good a position as he [or she] would have been in had the contract been performed."  Restatement (Second) of Contracts § 347 cmt. a; id. at § 344(a).  Because contract damages are primarily based on the injured party's expectation interest (also called performance interest) and give the injured party the benefit of the bargain embodied in the contract, the amount of damages will depend on the nature of the bargain.  Cf. Restatement (Second) of Torts § 549 cmt. 1 (Am. Law Inst. 1977)("The damages necessary to give the plaintiff the benefit of the bargain that he has made with the defendant will depend, first of all, upon the nature of the bargain.").

1.  **The statutory requirements of Hawaii's hotel and restaurant service charge law are incorporated as implied terms into the event agreement or other contract between the purchaser and the hotel or restaurant, and those requirements set the purchasers' expectation interest in the contracts**

When a hotel or restaurant applies a service charge for the sale of food or beverage services, the requirements of

HRS § 481B-14[6] govern and are incorporated as implied terms into the contracts between the hotel or restaurant and the purchasers of the food and beverage services.  That is because a "contract is presumed to include all applicable statutes and settled law relating to its subject matter."  Gabriel v. Island Pac. Acad., Inc., 140 Hawai'i 325, 336, 400 P.3d 526, 537, cert. dismissed, 138 S. Ct. 499 (2017).  See also id. (explaining that "[c]ontracting parties are presumed to contract in reference to the existing law, and to have in mind all the existing laws relating to the contract, or to the subject matter thereof." (citation omitted)).

The requirements of HRS § 481B-14 are, then, implied terms in the relevant contracts.  Id. ("All existing applicable or relevant statutes . . . at the time a contract is made become a part of it and must be read into it just as if an express provision to that effect were inserted therein, except where the contract discloses a contrary intention." (quoting 17A Am. Jur. 2d Contracts § 363)); Quedding v. Arisumi Bros., 66 Haw. 335, 338, 661 P.2d 706, 709 (1983)(stating that "it is a general rule that the existing law is part of a contract where there is no

_____

[6]     For the period relevant to this class action, the statute required that any hotel or restaurant "that applies a service charge for the sale of food or beverage services . . . shall distribute the service charge directly to its employees as tip income or clearly disclose to the purchaser of the services that the service charge is being used to pay for costs or expenses other than wages and tips of employees."  HRS § 481B-14.

stipulation to the contrary." (citation and internal quotation marks omitted)); 11 Williston on Contracts § 30:19 (4th ed.)(Supp. 2017)(the provisions of existing law "are regarded as implied terms of the contract, regardless of whether the agreement refers to the governing law.").

HRS § 481B-14's requirements set the expectancy or performance interest for the purchasers of food or beverage services to which a hotel or restaurant applies a service charge. Under the statute, those purchasers are entitled to expect that the service charge will be distributed directly and entirely to service employees as tip income. That expectancy interest can be overcome or negated only if the hotel or restaurant clearly discloses to those purchasers that the hotel or restaurant follows a pattern of distributing the proceeds of a service charge in a way that diverges from the distribution pattern specified by the statute. Id.; Kawakami I, 134 Hawai'i at 360, 341 P.3d at 566 (explaining that "absent disclosure, consumers are misled into believing the service charges are being used as a gratuity to employees who provide the services for which customers believe they are tipping.").

Here, it is undisputed that the hotel neither distributed the proceeds from the service charges directly and entirely to the service employees as tip income, nor clearly disclosed that it failed to do so. See HRS § 481B-14.

## 2. A hotel or restaurant's violation of the implied terms imposed by HRS § 481B-14 is a breach of contract

The requirements and expectations imposed by the implied terms incorporated into contracts from HRS § 481B-14 are clear. In Kawakami I, we held that under HRS § 481B-14,

> a hotel or restaurant that applies a service charge for food or beverage services must either [a] distribute the service charge directly as tip income to the non-management employees who provided the food or beverage services, or [b] disclose to its customers that the service charges are not being distributed as tip income.

Kawakami I, 134 Hawaiʻi at 354, 341 P.3d at 560 (emphasis and material in braces added); see also Gurrobat v. HTH Corp., 133 Hawaiʻi 1, 18, 323 P.3d 792, 809 (2014)(stating in a related context that "HRS § 481B-14 required Defendants to either distribute one-hundred percent of the service charge to employees as 'tip income' or disclose their retention of a portion of the service charge to customers." (emphasis added)); id. at 17, 323 P.3d 792, 808 ("Defendants were required to distribute one-hundred percent of service charge income to non-management service employees who provided the services for which customers believed they were tipping." (emphasis in original)).

In essence, HRS § 481B-14 gives legal force and form to the ordinary consumer expectation that service charges are to be distributed in their entirety to service personnel and not diverted to other uses by the hotel or restaurant. HRS § 481B-14 authorizes a departure from the distribution pattern based on

the ordinary consumer expectation only where the hotel or restaurant "clearly disclose[s]" that its pattern of distributing service charges diverges from the pattern specified by the statute.  Id.  As noted, those two "either/or" alternatives, incorporated into contracts governed by HRS § 481B-14 as implied terms, set the expectancy interest of purchasers of the relevant services.  As we stated in Kawakami I, in enacting HRS § 481B-14, the legislature:

> specifically sought to meet consumer expectations 'that service charges applied to the sale of food and beverages by hotels and restaurants are levied in lieu of voluntary gratuity, and are distributed to the employees providing the service'; an expectation that resulted in 'most consumers not tipping for services over and above the amounts they pay as a service charge.'

Kawakami I, 134 Hawai'i at 358, 341 P.3d at 564 (quoting S. Stand. Comm. Rep. No. 3077, in 2000 Senate Journal, at 1287 (emphasis added, braces omitted)).  By enacting HRS § 481B-14, the legislature intended to require hotels and restaurants 'to meet consumer expectations' that the service charge will be distributed to service personnel in lieu of a voluntary gratuity, not dedicated to some other purpose or diverted to some other party.  Thus, the statute aims to structure the relevant transactions such that a hotel or restaurant's pattern of distributing proceeds from service charges to its service employees will accord with normal consumer expectations.  The statute accomplishes that aim by setting up a baseline

14

distribution pattern for service charges, together with a means by which a hotel or restaurant can escape being bound by that baseline by clearly disclosing to the purchaser that it does not follow the baseline distribution pattern. Id.; see also Kawakami I, 134 Hawai'i at 354, 341 P.3d at 560; Gurrobat, 133 Hawai'i at 18, 323 P.3d at 809.

If a hotel or restaurant neither follows the specified service charge distribution pattern nor clearly discloses that it does not, it violates the contract's implied terms, thereby breaching the contract, and the purchaser "receives something substantially less or different from that for which he or she bargained." Williston on Contracts § 63:3 (4th ed.)(discussing material breach of a contract). The benefit of the bargain for a purchaser such as Kawakami is that 100% of the service charge paid by the purchaser to the hotel as a service charge goes directly to the service personnel as tip income in lieu of a voluntary gratuity.

Here, the hotel failed to perform its contractual obligation, mandated by the implied terms, to follow the baseline distribution pattern.[7] Nor did the hotel opt out of the

---

[7] Thus, we agree with Kawakami's argument that the statute-based implied terms of the contract were breached resulting in a violation of Kawakami's expectation interest. By the same token, we reject Kawakami's alternative damages theory that the contract itself was a void or illegal agreement. The contract itself was not illegal; it was simply a valid
(continued . . .)

implied terms requiring the baseline distribution pattern by following the statutorily-required route of clearly disclosing to Kawakami or the members of the class the fact that the hotel follows a different distribution pattern.[8]  Instead, the hotel retained for itself a percentage of the service charge, an amount that, had the purchaser been given the benefit of his bargain, would have been distributed entirely to the service personnel who assisted at his wedding reception.

3.  **Giving Kawakami the benefit of the bargain requires the hotel to pay in damages the portion of the service charge that was retained by the hotel rather than distributed to the service employees**

A party "who sustains a loss by the breach of another is entitled to compensation that will 'actually or as precisely as possible compensate the injured party.'"  Hi Kai Inv., Ltd. v. Aloha Futons Beds & Waterbeds, Inc., 84 Hawai'i 75, 80-81, 929 P.2d 88, 93-94 (1996)(citation omitted).  The nature of the

_____

(. . . continued)
contract whose implied terms were breached by the hotel resulting in damages to Kawakami.

[8]  The hotel admits it never disclosed to purchasers that its practice was to retain a portion of the proceeds from the service charge rather than "distribute the service charge directly to its employees as tip income[.]"  HRS § 481B-14.  The ICA was therefore mistaken in rejecting Kawakami's breach of contract argument on the basis that "the required disclosure under HRS § 481B-14 need not take the form of a written provision in an event contract, nor must it necessarily occur *before* parties enter into the contract[.]"  Kawakami II, mem. op. at 5.  The issue of the exact form or timing the disclosure must take under HRS § 481B-14 was not before the ICA, since the hotel failed to make the required disclosure in any form or at any time.

"loss" and the measure of the damages will depend in part on the party's expectation or performance interest and the nature of the bargain. 3 E. Allen Farnsworth, Farnsworth on Contracts § 12.20 (3rd ed. 2004)("It is a principle of the law of contracts that damages should be based on the injured party's lost expectation."); cf. Restatement (Second) of Torts § 549 cmt. l ("*Benefit of the bargain*. The damages necessary to give the plaintiff the benefit of the bargain that he has made with the defendant will depend, first of all, upon the nature of the bargain."). However, the interests on which the law of contracts rests, including the expectation interest, "are not inflexible limits on relief[.]" Restatement (Second) of Contracts § 344 cmt. a. Where justice requires, a court may fashion relief for the injured party even if the relief does not "correspond precisely" to the interest at issue. Id.

Here, Kawakami had a statutory and contractual right to expect that the service charge he paid to the hotel would be distributed directly and entirely to the service personnel as tip income and not retained in part by the hotel. HRS § 481B-14. The extent to which the hotel failed to deliver 100% of the proceeds from the service charge to the service employees in the manner required by the statute and the implied terms represents the extent of the breach. See Zanakis-Pico v. Cutter Dodge, Inc., 98 Hawai'i 309, 319, 47 P.3d 1222, 1232 (2002)("'benefit-

17

of-the-bargain' damages . . . are preconditioned on the breach of a contract."); Restatement (Second) of Contracts § 235(2)("When performance of a duty under a contract is due any non-performance is a breach."); id., § 236 cmt. a ("Every breach gives rise to a claim for damages . . . ").  The extent to which the hotel failed to deliver all the proceeds from the service charge in the manner required by the statute and the implied terms is also the measure of damages.  Restatement (Second) of Contracts § 347(a)(explaining that "the injured party has a right to damages based on his expectation interest as measured by . . . the loss in the value to him of the other party's performance caused by its failure or deficiency[.]" (emphasis added)).

        The hotel's retention of 15% of the proceeds from the 19% service charge violated HRS § 481B-14, the implied terms of contracts subject to the statute, and Kawakami's expectancy (or performance) interest.  It is true, as the circuit court observed in granting the JMOL, that Kawakami and the class did not appear to suffer any additional out-of-pocket loss as a result of the hotel's failure to distribute 100% of the service charge proceeds directly to the service personnel as tip income.  That failure, the court noted, "did not cause Plaintiffs to pay any additional sums over and above their contractual obligation to pay the service charge or any other additional compensation."

As the court explained, it was "struggling to understand how the Management's Share of the service charge constitutes financial or economic loss or harm to the Plaintiffs." The court was puzzled by the fact that the "jury awarded as damages to Plaintiffs a sum that appears to be equal to the amount of the Management's Share of the service charge." However, viewed in light of the class's expectancy or performance interest, the jury award reflects the fact that "the injured party has a right to damages based on his expectation interest as measured by . . . the loss in the value to him of the other party's performance caused by its failure or deficiency[.]" Restatement (Second) of Contracts § 347(a) (emphasis added).

The hotel contends that Kawakami's complaint does not, in fact, challenge the event contracts themselves. However, Kawakami specifically alleged that he paid the hotel a 19% service charge, and that "the final bill" for his reception banquet services failed to disclose that the service charge was not distributed in its entirety to service employees. He attached a copy of the final bill as an exhibit to the complaint. He alleged that the hotel "did not distribute all of the service charge to the employees who provided that service" but instead retained a portion of Kawakami's service charge for itself, and that the hotel had "a policy and practice of retaining for itself a portion of those service charges." In

19

addition, Kawakami alleged that the hotel's actions "are in direct violation of Hawai'i Revised Statutes § 481B-14."  He alleged as well that the hotel's conduct constituted unfair or deceptive acts or practices in violation of HRS § 480-2.

To satisfy Hawai'i Rule of Civil Procedure (HRCP) 8(a)(1),[9] "the complaint must contain either direct allegations on every material point necessary to sustain a recovery <u>on any legal theory</u>, even though it may not be the theory suggested or intended by the pleader, or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial."  <u>Marsland v. Pang</u>, 5 Haw. App. 463, 475, 701 P.2d 175, 186 (1985)(emphasis added, citation omitted); <u>In re Genesys Data Technologies, Inc.</u>, 95 Hawai'i 33, 41, 18 P.3d 895, 903 (2001)("Hawaii's rules of notice pleading require that a complaint set forth a short and plain statement of the claim that provides defendant with fair notice of what the plaintiff's claim is and the grounds upon which the claim rests.").

Kawakami's complaint put the hotel on notice that Kawakami alleged the hotel repeatedly violated the requirements of HRS § 481B-14, that the violations constituted unfair or

---

[9]    "*Claims for relief.*  A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief the pleader seeks."  HRCP 8(a).

deceptive acts or practices, that the final bill contained evidence of the violations, and that Kawakami suffered damages as a result. In addition, as the attorneys for the class asserted in the motion for class certification, "Defendant entered into form contracts with the class members for banquets, events, meetings, room service and other events in which Defendant added a pre-set 'service charge' to customers' bills for food and beverage provided by the hotel and/or its restaurants." "In this case, the same contract forms were used for all members." "There are also common questions of fact relating to the service charge charged to Plaintiff and the putative Class members, in terms of the Hotel's policy of distribution and the content of the Hotel's contract form."

Accordingly, we hold that the allegations in the plaintiffs' complaint gave the hotel fair notice that the hotel's pattern and practice of violating HRS § 481B-14 was at issue "on any legal theory." Marsland, 5 Haw. App. at 475, 701 P.2d at 186; see also Yap v. Wah Yen Ki Tuk Tsen Nin Hue of Honolulu, 43 Haw. 37, 39 (Haw. Terr. 1958)("Under our rules, a complaint is good if it contains a short and plain statement of the claim showing that the pleader is entitled to relief. (H.R.C.P., Rule 8 [a][1].) The rules do not require a statement of a cause of action." (emphasis added)); Hall v. Kim, 53 Haw. 215, 221, 491 P.2d 541, 545 (1971)(explaining that it "is not

necessary to plead under what particular law the recovery is sought" and emphasizing "the principle that the purpose of pleading is to facilitate a proper decision on the merits." (citations omitted)).  See also Laeroc Waikiki Parkside, LLC v. K.S.K. (Oahu) Ltd. P'ship, 115 Hawai'i 201, 216 n.17, 166 P.3d 961, 976 n.17 (2007)(stating that appellant failed to directly raise the cause of action of fraudulent inducement, but noting that pleadings are liberally construed, and a "liberal reading of Appellant's misrepresentation and nondisclosure claims shows that Appellees should have been on notice of Appellant's fraudulent inducement claims and 'the grounds upon which the claim rests.'" (citation omitted)).

**4.  Disposition of the judgments below in light of Kawakami's contract-based damages**

We now apply the principles of contract law explained above to the various judgments entered below, beginning with the JMOL.  We review de novo a trial court's rulings on motions for judgment as a matter of law.  Miyamoto, 104 Hawai'i at 6, 84 P.3d at 514.  Given that Kawakami suffered a legally-cognizable injury through the hotel's breach of contract, we vacate the circuit court's grant of JMOL (as well as the ICA's affirmance of it), as that grant and its affirmance were predicated on the courts' mistaken view that Kawakami had not shown any evidence of a cognizable injury.

The circuit court granted partial summary judgment to Kawakami on the liability issue prior to the damages trial. Subsequent to the jury's award of damages, the circuit court reversed its prior denials of the hotel's motions for JMOL and granted JMOL to the hotel, ruling that Kawakami failed to establish the hotel's liability. Because we hold the JMOL was improperly granted and accordingly vacate it, we now consider the validity of the prior grant of partial summary judgment to Kawakami on the liability issue. "This court may affirm a grant of summary judgment on any ground appearing in the record, even if the circuit court did not rely on it." Reyes v. Kuboyama, 76 Hawai'i 137, 140, 870 P.2d 1281, 1284 (1994). The circuit court's grant of summary judgment to Kawakami as to liability was predicated on the court's conclusion that HRS § 481B-14 imposes on hotels and restaurants a statutory "duty to disclose" to purchasers if the hotel or restaurant fails to follow the distribution pattern specified in the statute. See Kawakami I, 134 Hawai'i at 357, 341 P.3d at 563 (recognizing "the well-settled duty of hotels and restaurants to either distribute the entirety of the service charge directly to non-management banquet employees who served the consumers as 'tip income,' or to disclose its practice of withholding the service charge so that a well-informed consumer may choose to leave a tip for the employees as a reward for their service."). However, our

23

analysis of the principles of contract law, articulated above, shows that the statutory duty was also a contractual duty whose breach by the hotel rendered it liable for contract-based damages. For that reason we affirm (on different though related grounds) the circuit court's grant of partial summary judgment as to the hotel's liability to Kawakami.

Finally, we reinstate the jury's findings on legal causation and the amount of damages. The special verdict asked two questions. The first was, "Did the defendant's failure to disclose to plaintiffs that not all of the service charge was to be distributed directly to its employees as tip income legally cause injury to plaintiffs?" The jury's answer was "yes." As a matter of law and undisputed fact, that answer is correct. Under the implied terms of those contracts, a hotel or restaurant is contractually required either to follow the tip distribution pattern specified by the statute or to clearly disclose to the purchasers of food or beverage services that it does not. Here, it is undisputed that the hotel did neither, and that failure caused injury to the class.

The special verdict also asked, "What are the total damages for the entire plaintiff class?" The jury's answer was "$269,114.73." The total service charges collected by the hotel for the relevant period amounted to $1,697,884.73. The amount actually distributed to service employees as tip income was

24

$1,428,770.00. The total of the "management's share" was
$269,114.73.[10] In other words, the jury awarded for damages a
sum exactly equal to the "management's share" of the combined
service charges; that is, the jury awarded to Kawakami and the
class that portion of the total service charges collected that
the hotel diverted to its own use rather than distributing
directly as tip income.

Our analysis of the relevant principles of contract
law above led us to hold that Kawakami's damages for breach of
contract based on his expectation interest are properly measured
by the 15% of the total 19% service charge which the hotel
retained for itself rather than directly distributing as tip
income to service employees. The jury in the damages trial
considered the factual evidence regarding the total service
charges collected over the relevant period. The jury awarded
$269,114.73 to the class, corresponding to the amount of the
combined service charges retained by the hotel as "the
management share." That amount is 15% of the total 19% service
charge and corresponds to the amount retained by the hotel. The
jury's award is supported by substantial evidence. Mehau v.

---

[10] The total distributed as tip income to service employees, added
to the total of the "management's share," equals the total service charges
collected by the hotel. However, the total "management's share" is not
precisely equal to 15% of the combined total service charges collected
because for some events the hotel imposed a 20% service charge as opposed to
the usual 19% service charge.

Reed, 76 Hawai'i 101, 112-13, 869 P.2d 1320, 1331-32 (1994)("The jury's verdict need only be supported by substantial evidence, more than a scintilla, to be sustained by an appellate court.") Having vacated the circuit court's grant of JMOL to the hotel subsequent to trial, we reinstate the damages awarded at trial, in the amount awarded, albeit on the ground that the amount equals Kawakami's damages for the hotel's breach of contract. We turn now to the question of whether Kawakami and the class also sustained damages under the Hawai'i statute forbidding unfair or deceptive practices (UDAP), HRS Chapter 480.

**B. Kawakami and the Class Sustained Damages under the Unfair or Deceptive Acts or Practices (UDAP) Statute.**

To recover damages for a violation of the UDAP statute's prohibition on unfair or deceptive acts or practices, a consumer must prove (1) either that the defendant violated the UDAP statute (or that its actions are deemed to violate the UDAP statute by another statute), (2) that the consumer was injured as a result of the violation, and (3) the amount of damages sustained as a result of the UDAP violation. HRS § 480-2(d) (Supp. 2006);[11] HRS § 480-13(b)[12] (Supp. 2006); Compton v.

---

[11]    HRS § 480-2(d) provides that "[n]o person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices [UDAP] declared unlawful by this section." Here, it is undisputed that Kawakami and the class were "consumers" within the meaning of HRS chapter 480. In
(continued . . .)

Countrywide Fin. Corp, 761 F.3d 1046, 1053 (9th Cir. 2014)(citing Davis v. Wholesale Motors, Inc., 86 Hawai'i 405, 417, 949 P.2d 1026, 1038 (App. 1997)).

The first element for a UDAP claim is established if the act or practice in question is either proven to be a violation of HRS § 480-2 or deemed to be a violation ("declared unlawful") under HRS § 480-2. HRS § 480-13(a)(noting that any consumer injured by an unfair or deceptive act or practice that is "forbidden or declared unlawful by section 480-2" may "sue for damages sustained by the consumer[.]"). Here, the UDAP statute declares that violations of Hawaii's hotel and restaurant service charge law are deemed unlawful under HRS § 480-2. HRS § 481B-4 ("Any person who violates this chapter shall be deemed to have engaged in an . . . unfair or deceptive act or practice in the conduct of any trade or commerce within

---

(. . . continued)
addition, there is no dispute that the hotel's acts or practices occurred in trade or commerce. HRS § 480-2(a).

[12] HRS § 480-13(b) allows a consumer to sue for damages based on any violation of HRS § 480-2 and provides for treble damages and attorney's fees. It provides in relevant part:

    (a)    Any consumer who is injured by any unfair or deceptive act or practice forbidden or declared unlawful by section 480-2:

    (1)    May sue for damages sustained by the consumer, and, if the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater, and reasonable attorney's fees together with the costs of suit . . .

27

the meaning of section 480-2." (emphases added)); HRS § 481B-14 (containing Hawaii's hotel and restaurant service charge law). See also Davis v. Four Seasons Hotel Ltd., 122 Hawai'i 423, 427, 228 P.3d 303, 307 (2010)("Pursuant to HRS § 481B-4, any person who violates chapter 481B, including § 481B-14, 'shall be deemed to have engaged in an unfair method of competition and unfair or deceptive act or practice in the conduct of any trade or commerce within the meaning of section 480-2.'" (emphasis added)).

The second element of a UDAP violation requires injury to the consumer caused by such a violation. See HRS § 480-13(b). The UDAP statute does not expressly define the term "injury." See Zanakis-Pico v. Cutter Dodge, Inc., 98 Hawai'i 309, 316, 47 P.3d 1222, 1229 (2002) ("HRS chapter 480 defines neither 'injury' nor 'damages[.]'"). However, we construe the UDAP injury requirement broadly. Davis, 122 Hawai'i at 430, 228 P.3d at 310 (explaining that "as a remedial statute, chapter 480 must be construed liberally."). "As a general matter, 'injury' means a 'judicially-cognizable injury, that is, a harm to some legally-protected interest.'" Flores v. Rawlings Co., LLC, 117 Hawai'i 153, 167, 177 P.3d 341, 355 (2008) (construing the injury requirement for a UDAP claim under HRS § 480-13(b)). Here, the second UDAP element is satisfied because the hotel caused harm to Kawakami's legally-protected expectation or performance

28

interest, which was a term implied in the contract from the statute. Because the requirements of HRS § 481B-14 were incorporated as an implied term in the event agreement (or other relevant contract) between the hotel and the purchasers, a violation of the statute is also a breach of the implied term, and that breach caused harm to Kawakami's legally-protected interest.

The third element of a UDAP violation is proof of the amount of damages. Here, the requisite proof of the amount of damages was supplied by proof at the trial on damages of the "management's share" of 15% of the combined service charges -- found by the jury to amount to $269,114.73 -- which was diverted by the hotel to its own use rather than distributed directly and entirely to the service employees as tip income. Because the hotel did not clearly disclose that its distribution pattern differed from the baseline set by the statute, the hotel violated both HRS § 481B-14 and the implied terms of its contract with Kawakami, causing damage in an amount that was proved at trial.

A violation of Hawaii's hotel and restaurant service charge law, HRS § 481B-14, is deemed to also be an "unfair or deceptive act or practice in the conduct of any trade or

commerce within the meaning of [HRS] section 480-2";[13] the injury to Kawakami's legally-protected interest was caused by the hotel's breach of contract; and the amount of damages was proved at trial. Because Kawakami has met the elements for a UDAP claim, we remand to the circuit court for an award of treble damages and attorney's fees. HRS § 480-13(b)(1).

**C. The Circuit Court Properly Denied Kawakami's Motion in Limine No. 1.**

Less than two weeks before the trial on damages, Kawakami moved in limine for an order barring the admission of any evidence of damages other than the sums representing the full 19% paid by consumers for their service charge. He contended that any other evidence concerning damages would be irrelevant, immaterial, and unnecessarily confusing, including any evidence that the hotel diverted 15% of the proceeds to itself. Kawakami's theory was that the entire service charge was "illegal," not just the 15% diverted by the hotel to its own

---

[13] HRS § 481B-4 ("Any person who violates this chapter shall be deemed to have engaged in an . . . unfair or deceptive act or practice in the conduct of any trade or commerce within the meaning of section 480-2." (emphases added)). When a statute deems a violation of the statute to also be a violation of HRS § 480-2, the "deeming" satisfies the first element of a UDAP claim (conduct) but not the second element (requiring injury to the consumer caused by the conduct). Cf. Davis, 122 Hawai'i at 439, 228 P.3d at 319 (explaining in the context of a claim for unfair method of competition (UMOC) that "although the deeming language of HRS § 481B-4 eliminates the requirement that a plaintiff prove that a defendant's conduct that violates chapter 481B (including HRS § 481B-14) constitutes an unfair method of competition, it does not purport to modify the causation requirement of HRS § 480-13."); Gurrobat, 133 Hawai'i at 23, 323 P.3d at 814 (interpreting the causation element for a UMOC claim based on a violation of HRS § 481B-4, and stating that "a plaintiff need only prove an injury that flows from that which makes defendants' acts unlawful." (citations omitted)).

use.  Kawakami anticipated that the hotel would argue that the damages were limited to the 15% of the service charge "based on their [sic] theory that this is the proper measure of damages." Kawakami argued that any evidence regarding the 15% was irrelevant.  The trial court denied Kawakami's motion.  The ICA affirmed the trial court's ruling.  Kawakami II, mem. op. at 6.

We review an evidentiary decision based upon relevance under the right/wrong standard.  Ass'n of Apt. Owners of Wailea Elua, 100 Hawai'i at 110, 58 P.3d at 621.  "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Hawai'i Rule of Evidence Rule (HRE) 401 (emphasis added); State v. Kupihea, 80 Hawai'i 307, 314, 909 P.2d 1122, 1129 (1996)("evidence is relevant if it possesses a legitimate tendency to establish a controverted fact" (internal quotation marks omitted)).

The hotel was entitled to present evidence relevant to its theory that Kawakami's economic injury was limited to the 15% of the total service charge not paid to those employees who were servers at his event.  The fact that the hotel retained 15% of the total service charges tended to make the hotel's theory of damages more likely and was therefore relevant.

Moreover, Kawakami's motion in limine no. 1 is akin to a motion for partial summary judgment regarding damages. In general, such a motion must be served and filed no less than 50 days before the date of the trial. HRCP Rule 56(a). The practice of framing a motion for partial summary judgment as a motion in limine in order to avoid the time limitation of HRCP Rule 56 has been rightly rejected. "The use of motions in limine to summarily dismiss a portion of a claim has been condemned, and the trial courts are cautioned not to allow motions in limine to be used as unwritten and unnoticed motions for summary judgment or motions to dismiss." 75 Am. Jur. 2d Trial § 44 (2018). Id. (explaining that motions in limine should not be used "as a sweeping means of testing issues of law."). As we have stressed, a circuit court may properly deny a motion in limine where the motion is "akin to a motion for summary judgment or other dispositive motion." O'Grady v. State, 140 Hawai'i 36, 53 n.16, 398 P.3d 625, 642 n.16 (2017); see also Kuroda v. Kuroda, 87 Hawai'i 419, 427, 958 P.2d 541, 549 (App. 1998)(stating that "a motion in limine is not an authorized method for presenting issues involving genuine issues of fact (in contrast to stipulated facts, questions of law, and matters of discretion) to the court for decision."). We hold the circuit court did not err in denying Kawakami's motion in limine no. 1.

## IV. Conclusion

For the foregoing reasons, we vacate the circuit court's grant of judgment as a matter of law (JMOL) and the Intermediate Court of Appeals' affirmance of the JMOL. Having vacated the JMOL, we reinstate the circuit court's earlier grant of partial summary judgment to Kawakami (as to liability). We also reinstate the jury's special verdict on legal causation and the amount of damages in the trial on damages that followed the grant of partial summary judgment, as the special verdict is supported by substantial evidence. We remand to the circuit court for determination of treble damages and reasonable attorney's fees and costs under Hawaii's statute governing unfair or deceptive acts or practices. HRS § 480-13(b)(1).

| | |
|---|---|
| James J. Bickerton | /s/ Mark E. Recktenwald |
| John F. Perkin | |
| Brandee J.K. Faria | /s/ Paula A. Nakayama |
| Bridget G. Morgan | |
| Kristina M. Hanson | /s/ Sabrina S. McKenna |
| for petitioners | |
| | /s/ Richard W. Pollack |
| David J. Minkin | /s/ Michael D. Wilson |
| Lisa W. Cataldo | |
| for respondent | |

