**NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000206
30-SEP-2020
07:55 AM**

NO. CAAP-17-0000206

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


JIHYUN SIM, Individually, and as Court-Appointed
Personal Representative for the Estate of Her
Sister JISU SIM, SANG KI SHIM, father of JISU SIM,
and TIA SUK KIM, mother of JISU SIM,
Plaintiffs-Appellants,
v.
KONA ISLANDER INN, ASSOCIATION OF APARTMENT
OWNERS OF KONA ISLANDER INN, KONA ISLANDER INN
HOTEL, HAWAIIANA MANAGMENT COMPANY, LTD.,
ICHTHUS LAND COMPANY, CHRISTIAN VAN DYCK,
Individually, as a member of the Association
of Apartment Owners of Kona Islander Inn, and
owner of Rainbow Plantation Bed & Breakfast,
and DOES 2-100, inclusive, Defendants-Appellees

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 15-1-252K)


MEMORANDUM OPINION
(By: Leonard, Presiding Judge, and Chan and Wadsworth, JJ.)

Plaintiffs-Appellants Jihyun Sim (**Jihyun**),
Individually, and as Court-Appointed Personal Representative for
the Estate of Her Sister Jisu Sim (**Jisu**), Sang Ki Shim (**Shim**),
father of Jisu, and Tia Suk Kim (**Kim**), mother of Jisu
(collectively, **Plaintiffs**) appeal from the Final Judgment
(**Judgment**) in favor of Defendants-Appellees Association of
Apartment Owners of Kona Islander Inn (**AOAO KII**), Hawaiiana
Management Company, Ltd. (**HMC**), and Christian Van Dyck (**Van Dyck**)
(collectively, **Defendants**), entered on February 22, 2017, in the

Circuit Court of the Third Circuit (Circuit Court).[1] On appeal, Plaintiffs contend that the Circuit Court erred in: (1) summarily denying Plaintiffs' request for judicial notice of certain laws and adjudicative facts, as asserted in their trial brief; (2) permitting the trial testimony of Defendants' expert, Vincent Di Maio, M.D. (**Di Maio**); (3) denying Plaintiffs' motion for a new trial; and (4) granting Van Dyck's motion for judgment as a matter of law based on the statute of limitations.[2]

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Plaintiffs' contentions as follows and affirm.

## I. Relevant Background

On July 5, 2013, Jisu, then 40-years old, drowned in the swimming pool at the Kona Islander Inn (**KII**) in Kailua-Kona, Hawaiʻi. At the time, AOAO KII "promulgate[d] the house rules" for KII, and HMC "assist[ed] in managing the property." Jisu, a citizen of the Republic of South Korea, was staying at Van Dyck's Rainbow Plantation Bed & Breakfast (**Rainbow Plantation**) and farm, where she received room and board in exchange for working a few hours per day.

On July 5, 2013, at about 5 p.m., Van Dyck took Jisu, another Rainbow Plantation guest, and Van Dyck's seven-year-old daughter to KII, where Van Dyck owned two condominium units. The group made their way to the swimming pool, and at some point, Van Dyck and the other Rainbow Plantation guest went into the Jacuzzi hot tub that was located about ten to fifteen feet away from the pool.

Another swimmer later noticed Jisu at the bottom of the deep end of the pool, and as he got closer, realized she was not moving. He dove in and carried Jisu up to the surface. Apparently, none of the other swimmers or guests in the pool had seen the drowning. Jisu, who never regained consciousness, was

---

[1] The Honorable Melvin H. Fujino presided.

[2] Plaintiffs characterize Van Dyck's motion as one for a "directed verdict."

taken by ambulance to Kona Community Hospital, where she was pronounced dead on July 8, 2013.

Plaintiffs, who are surviving relatives of Jisu, filed a Complaint against multiple defendants, including AOAO KII and HMC, on June 29, 2015, and a First Amended Complaint against AOAO KII and HMC on December 9, 2015. Plaintiffs' Second Amended Complaint, filed on August 11, 2016, also named Van Dyck as a defendant.

On October 18, 2016, the case came on for jury trial as to several negligence-based claims and a prayer for punitive damages asserted in the Second Amended Complaint. The parties stipulated to the dismissal of the punitive damages prayer during trial.

At the close of Plaintiffs' case on October 25, 2016, the Circuit Court granted Van Dyck's motion for judgment as a matter of law based on his statute-of-limitations defense, brought pursuant to Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 50(a) (**Rule 50(a) motion**). On October 27, 2016, the jury returned a special verdict form in favor of AOAO KII and HMC, finding that both defendants were not negligent. Following entry of the Judgment, Plaintiffs timely filed this appeal.

## II. Discussion

### A. Plaintiffs' Request for Judicial Notice

On October 17, 2016, the day before trial commenced, Plaintiffs filed a "Trial Brief Re: Judicial Notice & Judicial Estoppel" (**trial brief**). In their trial brief, Plaintiffs asked the Circuit Court to take judicial notice of the following:

A. "State Law Governing Unsworn Falsifications to Authorities and Perjury[,]" specifically, HRS §§ 710-1060 and 710-1063 (**Request A**);

B. "Hawaii Administrative Rules Title 11 Department of Health Chapter 10 Public Swimming Pools" (**Request B**);

C. "[T]hat July 5, 2013 was a Friday, Between the 4th of July, and Saturday, July 6, 2013" (**Request C**);

D. "[T]he Definition of the Word 'Inn'" (**Request D**);

E. "[T]hat the Sunset in Kona on July 5, 2013 was at

3

7:06 p.m." (**Request E**);

F.    "[T]he July 5, 2016 Declaration of Christian Van Dyck" (**Request F**);

G.    "[T]he Declaration of Wayne Cober Dated June 30, 2016 and Filed in this Case" (**Request G**).

Plaintiffs also requested that:  (1) Van Dyck be "judicially estopped from taking positions [at trial] contrary to his July 5, 2016 declaration"; and (2) AOAO KII be "judicially estopped from taking positions [at trial] contrary to Mr. Cober's positions in his June 30, 2016 declaration[] (signed in his authority as President of the Board of Directors of Defendant AOAO)."  The trial brief was hand-served on counsel for AOAO KII and HMC in court on October 18, 2016, the first day of trial.

During a pre-trial hearing that day, the Circuit Court denied the requests contained in the trial brief, stating:

> [A]lthough it's called trial brief, the court has reviewed this document filed the day before trial.  Finds it's not fair to the defense.  It really is in essence either a motion in limine or a pretrial motion, so the court will deny it based on untimeliness.

On appeal, Plaintiffs contend that the Circuit Court erred in "summarily denying" their request for judicial notice of law and adjudicative facts as untimely.  They argue that the court's decision was contrary to Hawaiʻi Rules of Evidence (**HRE**) Rule 201(f), which states that "[j]udicial notice [of adjudicative facts] may be taken at any stage of the proceeding[,] and HRE Rule 201(e), which provides in relevant part that "[a] party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice [of adjudicative facts] and the tenor of the matter noticed."[3]

---

[3]    We note that Requests A and B sought judicial notice of law and administrative rules, respectively, which are governed by HRE Rule 202.  HRE Rule 202(b) states in relevant part that "[t]he court shall take judicial notice of . . . (2) the constitutions and statutes of the United States and of every state, territory, and other jurisdiction of the United States[.]"  HRE Rule 202(c) provides in relevant part that "[u]pon reasonable notice to adverse parties, a party may request that the court take, and the court may take, judicial notice of . . . (2) all duly published regulations of federal and state agencies[.]"  (Emphasis added.)

AOAO KII and HMC argue that even if the alleged error occurred, which they dispute, Plaintiffs have failed to explain how they were harmed by the Circuit Court's denial of their requests for judicial notice, and that any such error was "patently harmless." Similarly, Van Dyck argues that the "alleged issues of [j]udicial [n]otice play[ed] no role in the outcome analysis."

Pursuant to HRCP Rule 61, before a judgment will be set aside, it must be shown that any error made is prejudicial. See Bank of Hawaii v. Shinn, 120 Hawaiʻi 1, 20, 200 P.3d 370, 389 (2008) (quoting Jensen v. Pratt, 53 Haw. 201, 202, 491 P.2d 547, 548 (1971)). HRCP Rule 61 provides:

> HARMLESS ERROR.
>
> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

An appellate court may act pursuant to HRCP Rule 61 where it is necessary to set aside a judgment in order to do "substantial justice" or to safeguard "substantial rights." Shinn, 120 Hawaiʻi at 20, 200 P.3d at 389.

Here, even if the Circuit Court erred in denying Plaintiffs' requests for judicial notice, which we do not decide, we cannot conclude that the asserted defect is inconsistent with substantial justice. With respect to Plaintiffs' Requests A, C, D, E, and G, Plaintiffs have made no effort to demonstrate how the denial of these requests prejudiced their case or otherwise affected their substantial rights. See id. at 20, 200 P.3d at 389 ("[T]he requirement of showing that the error is prejudicial stems from HRCP Rule 61." (original brackets omitted) (quoting Jensen, 53 Haw. at 202, 491 P.2d at 548)). Absent any showing that the substantial rights of Plaintiffs were affected, the Circuit Court's decision to deny Requests A, C, D, E, and G, even if erroneous, was harmless.

5

With respect to Request B, Plaintiffs argue:

> [T]aking judicial notice[] of [HAR Section 11-10-21] would have established the administrative rule requir[ing] public pools to keep daily records. . . . Refusing to take judicial notice of the relevant HAR prejudiced [Plaintiffs] since the obligation to keep daily records, and the related failure of Kona Islander and the defendants to ensure the pool was equipped with a proper working filter – which would have led to clarity in the water on the day Jisu died – was the key issue at trial.

However, Plaintiffs do not explain how the Circuit Court's denial of their request for judicial notice of HAR Section 11-10-21 hindered them from eliciting evidence of AOAO KII's and HMC's records or record-keeping practices (or any alleged lack thereof) related to the pool, or AOAO KII's and HMC's alleged failure to ensure that the pool was equipped with a proper working filter at the time of the drowning. Plaintiffs also ignore the fact that the Circuit Court instructed the jury as to the relevant obligations imposed on AOAO KII and HMC under HAR Title 11, Chapter 10.[4] On this record, there has been no showing that the alleged error in denying Request B affected Plaintiffs' substantial rights. Accordingly, the Circuit Court's denial of Request B, even if erroneous, was harmless.

With respect to Request F, Plaintiffs contend that Van Dyck's July 5, 2016 declaration, in which he stated that "Jisu knew how to swim," contradicted his purported statement to police nearly three years earlier that "Jisu was not a good swimmer and could not swim." Plaintiffs argue that "the principle of judicial estoppel prevents this type of flip flopping[,]" and the Circuit Court "should have taken judicial notice of the existence

---

[4] The following instruction was read to the jury:

> The Defendant [sic] AOAO Kona Islander Inn and Hawaiiana Management Co., Ltd. were required by law to record, on a daily basis, the following information as it pertained to their pool:
>
> (1) . . . water clarity; and
>
> (2) The maintenance and malfunction of equipment.
>
> The information required shall be kept on file by the operator for a period of twelve months for review by the director.

of Van Dyck's [July 5, 2016] declaration . . . , not the truth of the matters asserted therein."[5]

However, Plaintiffs do not explain how the Circuit Court's failure to take judicial notice of <u>the existence</u> of Van Dyck's declaration prejudiced their case.[6]  At trial, Plaintiffs' counsel cross-examined Van Dyck as follows:

> Q  (By [Plaintiffs' counsel]) Did Jisu Sim know how to swim?
>
> A  Yes.
>
> Q  And, indeed, on July 5, 2016, you submitted a declaration that included the statement that Jisu knew how to swim; correct?
>
> A  Yes.

Plaintiffs thus made the existence of Van Dyck's July 5, 2016 declaration known to the jury.  Indeed, it appears that Plaintiffs also obtained the result they sought in their trial brief – testimony from Van Dyck that was consistent with his declaration.[7]  On this record, there has been no showing that the alleged error in denying Request F affected Plaintiffs' substantial rights.  The Circuit Court's denial of Request F, even if erroneous, was therefore harmless.

**B.    Expert Testimony on Causation**

Plaintiffs contend that the Circuit Court erred in permitting Di Maio's trial testimony, which Plaintiffs argue did not meet the applicable standards for admissible expert witness testimony.  More specifically, Plaintiffs contend that "Di Maio's opinions regarding the cause of Jisu's drowning were

---

[5]    In their trial brief, Plaintiffs requested that Van Dyck be "judicially estopped from taking positions [at trial] contrary to his July 5, 2016 declaration[.]"  On appeal, Plaintiffs do not identify the Circuit Court's denial of this request – which the court apparently viewed as an untimely motion to limit Van Dyck's testimony at trial – as a point of error. In addition, Plaintiffs make no substantive argument regarding judicial estoppel.  We therefore deem the issue waived.  <u>See</u> HRAP Rule 28(b)(4), (7).

[6]    The statements made in Van Dyck's declaration are plainly not adjudicative facts subject to judicial notice under HRE Rule 201.  <u>See</u> <u>State v. Moses</u>, 102 Hawaiʻi 449, 455, 77 P.3d 940, 946 (2003) ("HRE Rule 201 limits judicial notice to adjudicative facts 'not subject to reasonable dispute,' meaning that the fact must be commonly known or easily verifiable.").

[7]    The Circuit Court also admitted into evidence, at Plaintiffs' request, the police report containing Van Dyck's purported statement that Jisu "was not a good swimmer and could not swim."

methodologically flawed, unsupported speculation, and should [have] be[en] excluded under HRE [Rule] 702[8/] and the standards set forth in [State v. ]Samonte[, 83 Hawaiʻi 507, 532-34, 928 P.2d 1, 26-28 (1996)]."

AOAO KII and HMC point out that Plaintiffs filed a motion in limine to preclude Di Maio's trial testimony, but did not object at trial to his qualifications or to the admission of his testimony, suggesting that Plaintiffs waived this point of error. We disagree.

"[W]hen the trial court makes a definitive pretrial ruling that evidence is admissible, the party opposing that ruling need not renew its objection during trial in order to preserve its claim on appeal that the evidence was erroneously admitted." Kobashigawa v. Silva, 129 Hawaiʻi 313, 321, 300 P.3d 579, 587 (2013); see HRE Rule 103(a). Here, prior to trial, the Circuit Court heard Plaintiffs' motion in limine No. 16, which sought "to exclude defense expert . . . Di Maio's unreliable and speculative opinions regarding the cause of JISU SIM's drowning." After hearing oral argument, the Circuit Court definitively denied Plaintiffs' motion in limine; the court did not condition the admissibility of Di Maio's testimony at trial on "foundational prerequisites" or a "proper trial record." Kobashigawa, 129 Hawaiʻi at 325, 300 P.3d at 591. Accordingly, by obtaining a definitive ruling on their motion in limine, Plaintiffs did not waive their objection to evidence of Di Maio's opinions, as articulated in their motion. That objection was preserved, even in the absence of renewed objections when such evidence was presented during trial.

AOAO KII and HMC also argue that any error in admitting Di Maio's testimony, which addressed the cause of Jisu's

---

[8/]    HRE Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise. In determining the issue of assistance to the trier of fact, the court may consider the trustworthiness and validity of the scientific technique or mode of analysis employed by the proffered expert.

drowning, was harmless, given that the jury found that AOAO KII and HMC were not negligent and therefore did not reach the issue of causation.  Indeed, the Special Verdict Form signed by the jury foreperson indicated the following, in relevant part:

<u>Question #1:</u>  Was Defendant AOAO [KII] negligent?

Yes ____          No  ✓

Note: If you have answered "Yes" to Question #1, then answer Question #2.  Otherwise go to Question #3.

<u>Question #2:</u>  Was the negligence of Defendant AOAO [KII] a legal cause of the drowning of JISU SIM?

Yes ____          No ____

<u>Question #3:</u>  Was Defendant [HMC] negligent?

Yes ____          No  ✓

Note: If you have answered "Yes" to Question #3, then answer Question #4. . . .

<u>Question #4:</u>  Was the negligence of Defendant [HMC] a legal cause of the drowning of JISU SIM?

Yes ____          No ____

Thus, it appears that the jury's verdict was premised solely on a finding that AOAO KII and HMC were not negligent, and that the jury did not determine whether either defendant was the legal cause of Jisu's drowning.  By extension, the jury also did not determine whether either defendant was the cause in fact of the drowning.[9/]  See <u>O'Grady v. State</u>, 140 Hawaiʻi 36, 44, 398 P.3d 625, 633 (2017) ("the term 'legal cause' embodies both the concept of factual causation and the defendant's scope of liability"); <u>id.</u> ("In establishing legal causation, the plaintiff must first establish that . . . 'the defendant was a cause in fact of the plaintiff's injury.'" (quoting <u>McKenna v. Volkswagenwerk Aktiengesellschaft</u>, 57 Haw. 460, 465-66, 558 P.2d 1018, 1022 (1977))).

As previously stated, we will not set aside a judgment absent a showing that any error made is prejudicial.  See <u>Shinn</u>,

---

[9/]    The jury was instructed:  "An act or omission is a legal cause of an injury or damage if it was a substantial factor in bringing about the injury or damage.  One or more substantial factors such as the conduct of more than one person may operate separately or together to cause an injury or damage.  In such a case, each may be a legal cause of the injury or damage."

120 Hawaiʻi at 20, 200 P.3d at 389; HRCP Rule 61 (no error in the admission of evidence is ground for setting aside a judgment unless refusal to take such action appears "inconsistent with substantial justice"); see also HRE Rule 103 (a) ("[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected").  Here, even if the admission of DiMaio's testimony was erroneous, which we do not decide, we cannot conclude that the asserted defect is inconsistent with substantial justice.  The record shows that the jury did not reach the issue of causation, and Plaintiffs have failed to demonstrate how the admission of DeMaio's testimony on the issue of causation affected their substantial rights.  See Shinn, 120 Hawaiʻi at 20, 200 P.3d at 389.  Because the substantial rights of Plaintiffs were not affected, the Circuit Court's decision to admit DiMaio's testimony, even if erroneous, was harmless and does not warrant reversal.

**C.  Plaintiffs' Motion for a New Trial**

Plaintiffs contend that the Circuit Court erred in denying their motion for a new trial, because (a) "DiMaio's testimony was improperly admitted"; and (b) counsel for AOAO KII and HMC made "an improper and prejudicial closing argument . . . to the jury."

The denial of a motion for a new trial is within the trial court's discretion, and "we will not reverse that decision absent a clear abuse of discretion." Stanford Carr Development Corp. v. Unity House, Inc., 111 Hawaiʻi 286, 296, 141 P.3d 459, 469 (2006) (quoting In re Estate of Herbert, 90 Hawaiʻi 443, 454, 979 P.2d 39, 50 (1999)).  The movant must convince the court "that the verdict rendered for its opponent is against the manifest weight of the evidence." Id. (quoting Herbert, 90 Hawaiʻi at 454, 979 P.2d at 50).

The Circuit Court did not abuse its discretion in denying Plaintiffs' motion for a new trial based on the asserted inadmissibility of Di Maio's testimony.  As previously stated, the jury found that AOAO KII and HMC were not negligent.  Because the jury found that Plaintiffs failed to prove negligence, it never reached the issue of causation, which was the subject of

DiMaio's testimony.  See supra.  Accordingly, we cannot conclude that the jury's verdict, which was not dependent on Di Maio's testimony, was against the manifest weight of the evidence.

Plaintiffs further contend that they were entitled to a new trial because counsel for AOAO KII and HMC, in his closing argument, "improperly referred to Jisu's Family's motives in bringing the lawsuit by telling the jury that the lawsuit was 'attorney generated' and that their causes of action against defendants were 'not true' claims."  Plaintiffs point to the following excerpts from counsel's closing argument, which they did not object to at trial:

> Now, Exhibit . . . DA-25 is a set of answers to interrogatories which the Plaintiffs submitted in this case on February 29 of this year, 2016, and which they're in evidence. . . .
>
> Nowhere in . . . DA-25 when asked to describe what happened in this accident[,] nowhere do the Plaintiffs -- these are signed by the way by [Plaintiffs'] counsel, and [counsel] when he signed these answers didn't indicate that -- that Amanda had jumped in, and he also didn't say a word about water clarity.
>
> . . . .
>
> What did we have happen in this case?  Time and time again, oh, they allege this.  Not true.  They allege this. Not true.  They allege this.  Not true.  'Well, we'll change it one more time looking on the water quality.'  That clearly evidences a lack of faith in the case and frankly an attorney-generated lawsuit.

In context, these statements were made as counsel for AOAO KII and HMC summarized for the jury the various theories of liability that Plaintiffs had asserted over the course of the litigation and the evidence that undermined each theory.  In addition, the jury was instructed that the closing arguments of counsel are not evidence.  Having reviewed the record as a whole, we do not view counsel's statements in the closing argument, including the isolated reference to the phrase "attorney-generated lawsuit," as having impugned Plaintiffs' motives in bringing suit or otherwise prejudiced their case.[10/]  The Circuit

---

[10/]    Plaintiffs also argue that the above-quoted statements by counsel for AOAO II and HMC violated the Circuit Court's order granting Plaintiffs' motion in limine No. 8, which sought to preclude:

> Reference(s) as to when and why Plaintiffs explored
> (continued...)

Court did not abuse its discretion in denying Plaintiffs' motion for a new trial on this basis.

## D.   Van Dyck's Rule 50(a) Motion

Plaintiffs contend that the Circuit Court erred in granting Van Dyck's Rule 50(a) Motion based on the statute of limitations.

> "[I]t is well settled that a trial court's rulings on [motions for judgment as a matter of law] are reviewed de novo." Nelson [v. University of Hawaiʻi, 97 Hawaiʻi at 376, 393, 38 P.3d 95, 112 (2001)] (citing In re Estate of Herbert, 90 Hawaiʻi 443, 454, 979 P.2d 39, 50 (1999)).  When reviewing a motion for judgment as a matter of law, "the evidence and the inferences which may be fairly drawn therefrom must be considered in the light most favorable to the nonmoving party and [the] motion may be granted only where there can be but one reasonable conclusion as to the proper judgment." Id. (citing Carr v. Strode, 79 Hawaiʻi 475, 486, 904 P.2d 489, 500 (1995)).

Kramer v. Ellett, 108 Hawaiʻi 426, 430, 121 P.3d 406, 410 (2005).

As relevant to Van Dyck's Rule 50(a) motion, the record reveals the following:  Jisu was pronounced dead on July 8, 2013. On June 29, 2015, Plaintiffs filed their initial Complaint in this action.  Although Van Dyck was repeatedly referenced in the Complaint, he was not named as a defendant.  On December 9, 2015, Plaintiffs filed a First Amended Complaint, which also did not name Van Dyck as a defendant.  On August 11, 2016, Plaintiffs filed their Second Amended Complaint, which named Van Dyck as a defendant for the first time.  Plaintiffs alleged, in relevant part, that on July 5, 2013, Van Dyck left Jisu and his daughter in the pool without supervision, even though he knew that Jisu did not know how to swim, and that Jisu's drowning could have been avoided had Van Dyck remained alert while he was in the Jacuzzi a few feet away from the pool.

---

[10]/(...continued)
the possibility of retaining an attorney and when they retained an attorney, and the purposes or reasons why they retained an attorney, or any such matters.

We conclude that counsel's statements did not violate the Circuit Court's order.

HRS § 663-3 provides the applicable limitations period for a wrongful death action.[11/] The statute states in relevant part that "[a]ny action brought under this section shall be commenced within two years from the date of the death of the injured person, except as otherwise provided." HRS § 663-3 (Supp. 2015). See Hun, 63 Haw. at 283, 626 P.2d at 189 (explaining that the phrase "except as otherwise provided" allows for the applicability of the tolling provisions of HRS § 657-13 as well as other provisions of the HRS).

Here, there is no dispute that the wrongful death action against Van Dyck was not brought within two years of Jisu's death on July 8, 2013. Rather, Plaintiffs argue that at trial, they produced evidence that Van Dyck told police on the day of the drowning that Jisu could not swim, "misleading the police investigator to throw the trail off of his failure to supervise his daughter at the pool[,] which led to Jisu's death." Based on this evidence, and relying on Mauian Hotel, Inc., v. Maui Pineapple Co., 52 Haw. 563, 481 P.2d 310 (1971), Plaintiffs argue that the jury should have been allowed to determine that Van Dyck "lulled" Plaintiffs into not filing a claim against him, thus tolling the statute of limitations.

This court has clarified that "'lulling' is not a distinct legal doctrine, but simply one application of the doctrine of equitable estoppel." Wiesenberg v. University of Hawaiʻi, No. CAAP-15-0000711, 2019 WL 2066756, at *7 (Haw. App. May 10, 2019) (Mem. Op.); see also Mauian Hotel, 52 Haw. at 570, 481 P.2d 315 ("It appears that in reliance on the stipulation[, the third-party defendant] did not file a cross claim . . . until the statute of limitations had run."); Vidinha v. Miyaki, 112 Hawaiʻi 336, 342, 145 P.3d 879, 885 (App. 2006) (analyzing "lulling" under equitable estoppel doctrine). Accordingly, a plaintiff claiming to have been lulled into inaction until the statute of limitations ran on a claim "must show that he or she has detrimentally relied on the representation or conduct of the

---

[11/] Plaintiffs do not dispute that this is a wrongful death action governed by HRS § 663-3. See Hun v. Center Properties, 63 Haw. 273, 279, 626 P.2d 182, 186 (1981) (applying HRS § 663-3 where the nature of the claim was recovery for the wrongful death of the decedent).

person sought to be estopped [from asserting a statute-of-limitations defense], and that such reliance was reasonable." <u>Vidinha</u>, 112 Hawaiʻi at 342, 145 P.3d at 885 (quoting <u>Doherty v. Hartford Ins. Group</u>, 58 Haw. 570, 573, 574 P.2d 132, 134-35 (1978)).

Here, upon review of the record, it appears that Plaintiffs produced no evidence that they detrimentally relied on Van Dyck's alleged statement to the police in July 2013 that Jisu could not swim. At trial, Kim and Jihyun did not testify that they ever reviewed the alleged statement. Moreover, Jihyun testified (via deposition) that: (1) Jisu had told her that she (Jisu) did not know how to swim; and (2) to Jihyun's knowledge, Jisu did not know how to swim. Shim testified that after Jisu drowned, he obtained a copy of the police records, which he could not read because they were in English. Shim further testified that his son-in-law and Jihyun helped him review the police report; however, he did not testify that he actually reviewed Van Dyck's alleged statement or that it caused Plaintiffs not to timely file a claim against Van Dyck. In addition, when Shim was asked, "When Jisu left Korea to come to Hawaii, what did you believe about Jisu's ability to swim," Shim responded, "I thought she didn't swim." Considering the evidence and the inferences that may be fairly drawn from the evidence in the light most favorable to Plaintiffs, we conclude there was no legally sufficient evidentiary basis for a reasonable jury to find that Plaintiffs detrimentally relied on Van Dyck's alleged statement to the police that Jisu could not swim. The Circuit Court thus did not err in ruling there was no legally sufficient evidence for a jury to find that Van Dyck should be equitably estopped from asserting his statute-of-limitations defense.

Plaintiffs also argue that the jury should have been allowed to consider Van Dyck's alleged statement to the police that Jisu could not swim as evidence of "fraudulent concealment" – another basis for tolling the statute of limitations.

HRS § 657-20 (1993) states, in relevant part:

> If any person who is liable to any of the actions mentioned in . . . section 663-3, fraudulently conceals the existence of the cause of action or the identity of any person who is liable for the claim from the knowledge of the person

entitled to bring the action, the action may be commenced at any time within six years after the person who is entitled to bring the same discovers or should have discovered, the existence of the cause of action or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitation.

The supreme court has defined fraudulent concealment as the "employment of artifice, planned to prevent inquiry or escape investigation, and misle[a]d or hinder acquirement of information disclosing a right of action.  The acts relied on must be of an affirmative character and fraudulent."  Au v. Au, 63 Haw. 210, 215, 626 P.2d 173, 178 (1981) (quoting Lemson v. General Motors Corp., 238 N.W.2d 414, 415 (Mich. Ct. App. 1975)).  The supreme court has further explained:

> The fraudulent concealment which will postpone the operation of the statute must be the concealment of the fact that plaintiff has a cause of action.  If there is a known cause of action there can be no fraudulent concealment.
>
> It is not necessary that a party should know the details of the evidence by which to establish his cause of action.  It is enough that he knows that a cause of action exists in his favor, and when he has this knowledge, it is his own fault if he does not avail himself of those means which the law provides for prosecuting or preserving his claim.

Id. at 215-16, 626 P.2d at 178 (ellipsis omitted) (quoting Weast v. Duffie, 262 N.W. 401, 402 (Mich. 1935); see Malabe v. Association of Apartment Owners of Executive Centre, 147 Hawaiʻi 330, 357 n.36, 465 P.3d 777, 804 n.36 (2020) (applying Au standard).

Here, upon review of the record, it appears that Plaintiffs produced no evidence that Van Dyck acted affirmatively and fraudulently to conceal evidence supporting an element of a wrongful death claim against Van Dyck.  Indeed, Plaintiffs asserted a wrongful death action in their initial Complaint, and repeatedly referenced Van Dyck and his daughter without naming Van Dyck as a defendant.[12/]  More than three years after Jisu's death, Plaintiffs filed their Second Amended Complaint, naming

---

[12/]     The Complaint alleged, for example, that:  (1) "[o]n or about July 5, 2013, . . . J[isu] went to the [KII] with her landlord/employer . . . Van [Dyck]"; (2) "J[isu], . . . Van [Dyck], his daughter, and one other person went to the [KII] for a swim"; (3) "[p]rior to her death, J[isu] was using the pool with [Van Dyck's] daughter"; (4) "J[isu] and [Van Dyck's] daughter were in the shallow end of the pool"; and (5) "J[isu] grabbed [Van Dyck's' daughter's ankle as she was sliding into the deep end."

15

Van Dyck as a defendant based on his alleged failure to supervise Jisu and his daughter "even though he knew Jisu did not know how to swim." Plaintiffs do not explain how Van Dyck's alleged statement to the police three years earlier that Jisu could not swim, which is consistent with Plaintiffs' theory of liability, concealed their claim.

At trial, Plaintiffs argued that, while Jisu was in the shallow end of the pool, Van Dyck's daughter accidentally jumped onto Jisu, which rendered her unconscious and caused Jisu's drowning. This theory appears to have been based on speculation about the content of a security video recording of the pool at the time of the drowning, which Plaintiffs themselves describe as a "fuzzy recording" in which "[t]he pool umbrellas blocked some of the most scenes [sic] which made viewing the . . . recordings difficult.[13] Plaintiffs contend: "It appears from the recording from security camera 4 (although hazy, out of focus, and partially blocked by pool-side umbrellas) that [Van Dyck's daughter] got out of the pool and jumped on top of Jisu who was still in the pool." Putting aside the quality of the recording, Plaintiffs never explain how Van Dyck's alleged statement to the police that Jisu could not swim hindered Plaintiffs' ability to acquire and view the recording. In fact, there appears to be no dispute that "a DVD of surveillance cameras 1, 2, 4, 5 and 6 . . . of the Kona Islander Inn pool incident" was transmitted to Plaintiffs' counsel on January 16, 2014, roughly six months after Jisu's death and well before the two-year limitations period ran.

Considering the evidence and the inferences that may be fairly drawn from the evidence in the light most favorable to Plaintiffs, we conclude there was no legally sufficient evidentiary basis for a reasonable jury to find that Van Dyck fraudulently concealed evidence supporting an element of a wrongful death claim against Van Dyck. The Circuit Court thus did not err in so ruling.

Accordingly, the Circuit Court did not err in ruling that Plaintiffs brought this action against Van Dyck after the

---

[13] Indeed, at trial, Plaintiffs' counsel candidly told the jury, "[I]t's hard to make out what happens" in the recording.

applicable two-year limitations period had expired, and in granting Van Dyck's Rule 50(a) motion on that ground.

### III. Conclusion

For these reasons, the Final Judgment entered on February 22, 2017, in the Circuit Court of the Third Circuit, is affirmed.

DATED:  Honolulu, Hawaiʻi, September 30, 2020.

On the briefs:

John Y.U. Choi
for Plaintiffs-Appellants.

Robert P. Richards and
Samantha Storm
(Myhre, Tsuchida, Richards &
Storm, Attorneys at Law, A
Law Corporation)
for Defendants-Appellees
Association of Apartment
Owners of Kona Islander Inn
and Hawaiiana Management
Company, Ltd.

James V. Myhre
(Myhre, Tsuchida, Richards &
Storm) and
J. Patrick Gallagher
(Gallagher Kane Amai)
for Defendant-Appellee
Christian Van Dyck

/s/ Katherine G. Leonard
Presiding Judge


/s/ Derrick H.M. Chan
Associate Judge


/s/ Clyde J. Wadsworth
Associate Judge